# Randolph *v.* Yellowstone Kit.

*Action to recover Money paid under Protest as License Tax.*

1. *License tax on peddlers.*—A person who, having rented a vacant lot in a city, and erected thereon a large tent, with numerous stands and benches, there gives "free exhibitions of sleight of hand and other performances and lectures, in which he frequently extols the merits of his goods, and during said exhibitions sells medicines and such like, from stock in said tent, the articles being handed around among the audience by himself or his agents, but neither makes nor solicits any sales whatever outside of the tent," is not liable to the license tax imposed by the revenue law of December 11th, 1886 (Sess. Acts 1886-7, p. 37, § 5, subd. 18), upon "peddlers of medicines or other articles of like character."

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This action was brought by "Yellowstone Kit," as the plaintiff called himself, against F. C. Randolph, judge of probate of said county, to recover the sum of $300, which he had paid to the defendant, under protest, as a license tax imposed by the provisions of the amendatory revenue law approved December 11th, 1886 (§ 5, subd. 18), on "peddlers of medicines or other articles of like character." The case was submitted on an agreed statement of facts, as follows:. "It is agreed and admitted, that plaintiff came from Atlanta, Georgia, to Montgomery, Alabama, and there rented a lot by the month, said rent to be terminated, at the option of the plaintiff, at the end of any rental month; and he erected on said lot a large tent, in which he placed stands and a large number of seats in circular form, and electric lights for the purpose of lighting it up at night; and in said tent he gave free exhibitions of sleight of hand and other performances, and lectures, in which he frequently extolled the merits of his goods, and during said exhibitions sold medicines and such like, from stock in said tent, the articles sold being handed around in the audience by himself or his agents; and these exhibitions were accompanied with a band of music, but no sales whatever were made or solicited outside of said tent. Plaintiff has been conducting this business nowhere else in this State, but he had conducted business in the same mode and manner in cities in other

[Randolph v. Yellowstone Kit.]

States, remaining in each city from one to three months. It is admitted, also, that plaintiff formerly lived in California, but has no intention of returning there, intending to locate in some southern State, not yet decided on, and having acquired as yet no permanent place of residence. It is admitted, also, that he does not carry about with him his medicines, or other articles offered for sale; but it is his custom, when leaving a place, to leave an unsold stock with druggists, for sale on commission, and to have other stock shipped to him from his general store-house in New Orleans to the next place of going. It is further admitted, also, that in going from one place to another, he travels in the usual course by railroad or water, and neither on foot, nor on horseback, nor in any vehicle drawn by a horse or other animal."

On these facts, the court instructed the jury to find for the plaintiff; and this charge, to which the defendant excepted, is here assigned as error.

THOS. N. McCLELLAN, Attorney-General, for the appellant.

JNO. GINDRAT WINTER, contra.

STONE, C. J.—The term "peddler" has many definitions, more or less full. It is the noun of the verb to peddle, the definition of which is, "to go about and sell; to retail by carrying around from customer to customer; to hawk; to retail in very small quantities."—Webster's Dic.; Worcester's Dic.; Imperial Dic.; Bouvier's Law Dic.; Rapelje & Lawrence Law Dic. These several definitions vary somewhat in phraseology, but they are not very materially different in meaning. Its popular signification is, a small retail dealer, who, carrying his merchandise with him, travels from house to house, or from place to place, either on foot, on horseback, or in a vehicle drawn by one or more animals, exposing his goods for sale, and selling them; and in the absence of something in the statute to control us, we must interpret the language employed by the legislature in its popular sense.—Lehman, Durr & Co. v. Robinson, 59 Ala. 219, authorities cited; Mayor v. Winter, 29 Ala. 651. Higgins v. Rinker, 47 Tex. 393, and State v. Hodgson, 41 Ver. 139, bear on this question; but these decisions were pronounced on statutes different from ours.

We think, however, that the question raised in this case

must be determined mainly by the phraseology employed in our revenue system. That system requires a license to be obtained before entering upon certain named occupations, and imposes penalties upon persons who engage in such occupations without first obtaining a license therefor. We must suppose that the legislature mentioned and provided for every occupation, for engaging in which that body considered a license should be obtained. We must interpret its language in its fair, legitimate, popular signification; and if we find a case that does not fall within its provisions, thus interpreted, we must conclude the legislature did not intend to provide for it, or that it was overlooked. In either event, we are powerless to supply the omission.

A demand was made upon defendant, appellee in this case, for the price of a license, State and county, imposed on "peddlers of medicines, with vocal or instrumental music, or both," under the amendatory revenue law, approved December 11, 1886, section 5, subd. 18; Sess. Acts, 1886-7, page 37. Defendant was under arrest, and paid the sum demanded under protest. The present suit was brought to recover the money back, as having been improperly demanded and collected. There were verdict and judgment for plaintiff, the court instructing the jury to so find, if they believed the evidence. That charge is the only error assigned in this court.

The provisions of the said amendatory revenue law, deemed material in this investigation, are as follows: Sess. Acts 1886-87, p. 35, § 5, subd. 9; "For peddlers in a wagon drawn by one horse or other animal, forty dollars; if drawn by two horses or other animals, fifty dollars; for peddlers on a horse or other animal, twenty-five dollars; for peddlers on foot, fifteen dollars; for peddlers accompanied by singers or performers on any musical instruments, one hundred dollars." On page 36, subd. 10, is this language: "Upon transient or itinerant auctioneers, or dealers in goods, wares or merchandise, other than licensed peddlers and travelling agents of wholesale dealers in said articles, making sale thereof by sample, fifty dollars."

The provision, under which the right to collect and retain the money in this case is claimed, is the second clause of section 5, subd. 18, of said act, p. 37. Its language is: "For peddlers of medicines, or other articles of like character, spectacles or eye-glasses, one hundred dollars in each county in which they peddle. For peddlers of medicines,

with vocal or instrumental music, or both, two hundred and fifty dollars for each county in which they peddle."

In the act "To regulate the practice of pharmacy," &c., approved February 28, 1887—Sess. Acts 106, 110—is a clause which may bear on this question. Section 9: "That any itinerant vender of any drug, poison, ointment, or appliance of any kind, intended for treatment of any disease or injury, who shall, by writing, printing, or any other method, publicly profess to cure or treat disease, or injury or deformity, by any drug, nostrum or manipulation, or other expedient, shall pay a license of one hundred dollars *per annum* to the State, to be paid in the manner for obtaining public license, or according to the usual laws of force for that purpose."

Our purpose in presenting all these statutory provisions is, to show that the legislature has drawn a distinction between "peddlers" as a class, "transient or itinerant dealers in goods, wares and merchandise, who are not licensed peddlers," and a certain class of "itinerant venders of drugs," &c. We need not, and do not, decide whether, according to the agreed facts, the defendant could have been proceeded against under either of the provisions, second and third, above referred to. The proceeding was not under either of them. The money was demanded and collected from him as a peddler, and if he was not a peddler, the collection was unauthorized and tortious. The statute, however, by naming the several classes, and containing separate and differing provisions as to each class, proves that the legislature did not intend to include all itinerant and transient dealers, under the general head of peddlers; and that there are itinerant and transient dealers who are not peddlers. We think we give full effect to the statute by holding that the legislature intended to embrace under the term peddlers only such itinerant dealers as fall within one of the classes into which they divided them: "Peddlers in a wagon, drawn by one animal; peddlers in a wagon, drawn by two animals, which includes those drawn by more than two animals ; peddlers on a horse or other animal, and peddlers on foot." And if either of these classes of peddlers was accompanied by singing, or performance on a musical instrument, the license fee was increased. The defendant did not fall within either of these classes, and hence was not required to take out a license as a peddler.

The City Court did not err in the charge given.

Affirmed.