[20954.  In Bank.—April 1, 1893.]

# Ex parte WILLIAM S. WHITWELL, on Habeas Corpus.

98   73
137  587
98   73
143  372
98   73
145  687
98   73
147  650
147  766
98   73
f149 106
149  762

Police Power—Unreasonable Ordinance—Regulation of Insane Asylums. —An ordinance of the board of supervisors of a county, which provides that no hospital, or asylum, or place for the care of insane persons, or persons affected with inebriety, or other nervous diseases, shall be maintained, unless the building is constructed of either brick or iron, or iron and stone, or unless the building and the grounds to which the insane persons are allowed access shall be surrounded by a brick or stone wall at least twelve feet high and eighteen inches thick, and that no such building shall be permitted within four hundred yards of any dwelling or school; and which further provides that only one of the classes of persons therein mentioned shall be treated in the same building, and that a separate house shall be required for the treatment of each of the diseases named, and that male and female patients shall not be cared for or treated in the same building, is unreasonable in its provisions, and not a proper exercise of the police power, and is therefore void.

Id.—Extent of Police Power—Discretion of Legislature—Regulation of Useful Business—Province of Judiciary.—The police power is extensive, and in its exercise a very wide discretion as to what is needful or proper for that purpose is necessarily committed to the legislative body in which the power to make such laws is vested; yet when such power is exerted to regulate a useful business or occupation, the legislature is not the exclusive judge as to what is a reasonable and just restraint upon the constitutional right of the citizen to pursue any trade, business, or a vocation, which in itself is recognized as innocent and useful to the community; but it is always a judicial question whether any particular regulation of such right is a valid exercise of police power, though the power of the courts to declare such regulation invalid will be exercised with the utmost caution, and only when it is clear that the ordinance or law declared void passes beyond the limitations of the police power and infringes upon constitutional rights.

ID.—POSSIBILITY OF DANGER. — Legislation imposing an onerous burden of expense upon a lawful business cannot be justified by the mere possibility of the danger which it ostensibly seeks to avert. It must rest upon the fact that experience shows that such danger, in the absence of such regulation, is one which may be reasonably anticipated, notwithstanding the exercise of care to prevent it.

ID.—PRIVATE ASYLUM FOR INSANE PERSONS—PROHIBITION OF LAWFUL BUSINESS. —The business of maintaining a private asylum for the treatment of persons suffering from mild forms of insanity, or inebriety, or any mental or nervous disease, is a lawful one, which cannot be prohibited either directly or indirectly.

APPLICATION to the Supreme Court for a discharge from imprisonment upon a writ of *habeas corpus.*

The facts are stated in the opinion of the court.

*George C. Ross,* for Petitioner

The ordinance deprives the petitioner of his property and of his liberty without due process of law. (*In re Jacobs,* 98 N. Y. 98; 50 Am. Rep. 639; *Pumpelly* v. *Green Bay Co.,* 13 Wall. 177; *Wynehamer* v. *People,* 13 N. Y. 398; *People* v. *Gillson,* 109 N. Y. 389; 4 Am. St. Rep. 468; *Slaughter House Cases,* 16 Wall. 36, 106; *People* v. *Marx,* 99 N. Y. 377; 52 Am. Rep. 34; *Butchers' Union* v. *Crescent City Co.,* 111 U. S. 746; *Live Stock Assoc.* v. *Crescent City Co.,* 1 Abb. Pr. N. S. 388, 398.) The appellate court has the power to determine whether or not the ordinance in question is unreasonable or oppressive. (*Spring Valley Water Works* v. *San Francisco,* 82 Cal. 286; 16 Am. Rep. 116; *Ex parte Chin Yan,* 60 Cal. 83; Dillon on Municipal Corporations, 328; *Ex parte Tuttle,* 91 Cal. 591.) It is clear and undoubted law that police regulations, to be valid, must be reasonable. (1 Dillon on Municipal Corporations, secs. 319, 323, 327, 328; *Ex parte Frank,* 52 Cal. 609; 28 Am. Rep. 642; *Ex parte Kearny,* 55 Cal. 212; *Ex parte Hodges,* 87 Cal. 162; *Corrigan* v. *Gage,* 68 Mo. 544; *Austin* v. *Murray,* 16 Pick. 125; *Clason* v. *Milwaukee,* 30 Wis. 321; *State* v. *Jersey City,* 47 N. J. L. 286; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Watertown* v. *Mayo,* 109 Mass. 315; 12 Am. Rep. 694; *Caldwell* v. *Lincoln,* 19 Neb. 569; *Dunham* v. *Rochester,* 5 Cowen, 462; *Myers* v. *C. R. I. & P. R. R.,* 57 Iowa, 555; *Commonw.* v. *Robertson,* 5 Cush. 438.) What are reasonable regulations is firmly established to be a judicial question. (Tiedeman's Limitation of Police Power,

sec. 194; *Toledo etc. R. R. Co.* v. *Jacksonville,* 67 Ill. 37; *Ohio etc. R. R. Co.* v. *Lackey,* 78 Ill. 55; 20 Am. Rep. 259; *Delaware etc. R. R. Co.* v. *East Orange,* 41 N. J. L. 133; *In re Jacobs,* 98 N. Y. 98; 50 Am. Rep. 643; *People* v. *Gillson,* 109 N. Y. 389; 4 Am. St. Rep. 465; *State* v. *Jersey City,* 47 N. J. L. 286.)

*G. W. Towle, Jr.,* and *Robert Y. Hayne,* for Respondent.

The judgment of the board is conclusive upon the court as to the necessity and expediency of the ordinance, as the regulation certainly has a tendency to accomplish the end desired, and is not a mere pretense. (*Johnson* v. *Simonton,* 43 Cal. 249; *Town Council* v. *Pressley,* 33 S. C. 56; *Ex parte Tuttle,* 91 Cal. 591.) It is not a valid objection to the ordinance that the asylum is within the prohibited distance from a dwelling. (*In re Hang Kie,* 69 Cal. 149; *Barbier* v. *Connolly,* 113 U. S. 27; *Soon Hing* v. *Crowley,* 113 U. S. 703; *In re Linehan,* 72 Cal. 114; *Natal* v. *Louisiana,* 139 U. S. 621; *Kansas City* v. *McAleer,* 31 Mo. App. 433; *Ex parte Christensen,* 85 Cal. 208; *Mugler* v. *Kansas City,* 123 U. S. 661; *Coates* v. *Mayor,* 7 Cowen, 585; 1 Dillon on Municipal Corporations, 3d ed., pp. 142, 169.) The courts had power to pass the ordinance in question under the County Government Act. (Laws, 1883, p. 308, sec. 25, subd. 27. See *Ex parte White,* 67 Cal. 102; *Ex parte Moynier,* 65 Cal. 33; *Barbier* v. *Connolly,* 113 U. S. 27; *Soon Hing* v. *Crowley,* 113 U. S. 703; *Ex parte Casinello,* 62 Cal. 540; *Chillicate* v. *Brown,* 38 Mo. App. 609; *State* v. *Heidenhain,* 42 La. An. 484; 21 Am. St. Rep. 388; *State* v. *Schlemmer,* 42 La. An. 1166; *In re Linehan,* 72 Cal. 114; *Summerville* v. *Pressley,* 38 S. C. 56; *Ex parte Campbell,* 74 Cal. 20; 5 Am. St. Rep. 418; *Ex parte Tuttle,* 91 Cal. 589; *Ex parte Fiske,* 72 Cal. 125; *Kansas City* v. *McAleer,* 31 Mo. App. 433; *Natal* v. *Louisiana,* 139 U. S. 621; *State* v. *Beattie,* 16 Mo. App. 131; *Ex parte Christensen,* 85 Cal. 208; *City R'y* v. *Mayer,* 77 Ga. 720.)

DE HAVEN, J.— This is a proceeding upon *habeas corpus,* and it appears from the return to the writ issued herein, that at the date of its service the petitioner was imprisoned by the sheriff of San Mateo County upon a charge of maintaining within

that county a hospital for the treatment, for reward, of insane persons, without having procured a license so to do, as required by an ordinance adopted by its board of supervisors March 16, 1892. The ordinance referred to purports to be one "to license for purposes of regulation and revenue the business of keeping . . . . within the county of San Mateo . . . . hospitals, asylums, homes, retreats, or places for the care or treatment for reward of insane persons, or persons of unsound mind, or inebriates, or persons affected by or suffering from any mental or nervous disease, or who are suffering from the effects of the excessive use of alcoholic liquors."

By the first section of this ordinance it is made unlawful to maintain within the county of San Mateo any hospital, asylum, or place for the care or treatment for reward of any insane person, or person belonging to either of the classes mentioned in the title of the ordinance, unless the keeper of such hospital or asylum shall have first procured a license therefor. The second section provides that before any such license shall issue, the person desiring the same shall make a written application therefor to the board of supervisors. The third section provides for giving notice of the time for the hearing of such application, when any person interested in favor of or in opposition to the granting of such license may be heard, and the sworn testimony of persons may be taken in relation to such application; and if after such hearing the board shall be satisfied "that the designated premises are suitable for the purpose, and that the persons designated in such application as superintendent and attending physician or physicians, are proper and suitable persons for their several stations," said board shall grant such applicant a license, "provided, however, that in no case shall such license be granted unless the board shall be satisfied . . . . that the building and buildings designated in such application is and are what are usually known as fire proof, by reason of being constructed of brick and iron, or stone and iron, and that such building, so designated in said application, is not more than two stories in height, and that the same and the land used in connection therewith, or such part of said land as any of the patients are to have access to, is surrounded by a brick or stone wall, not less than eighteen inches in thickness, and not less than twelve feet

in height, and in which wall there is but one opening, which opening is closed by a solid iron door . . . . so constructed and fitted into said wall as that the same may be securely fastened by a combination lock, and said door is furnished with a combination lock; and provided further, that no such license shall be granted if the premises designated in the application are within a distance of four hundred yards from any dwelling-house or school-house." Section 4 provides: "That no license issued hereunder shall authorize male and female persons, or more than one of the classes of persons designated in section 1 hereof, to be cared for or treated in the same building, or put together in the same building, or in any inclosure connected with any building." Section 9 gives the form of the license which is to be issued, and which by its terms only authorizes the person to whom it is issued to carry on the business of keeping a hospital or asylum for the care or treatment of one of the classes of persons designated in the first section of the ordinance, subject to all the conditions, restrictions, and penalties in the ordinance contained.

The petitioner alleges that he is a physician and surgeon; and that the particular branch of the profession to which he especially devotes his attention is the treatment of insane persons and patients with nervous and mental disorders and inebriates and persons suffering from the excessive use of intoxicating liquors; and that for the purpose of more effectually treating such persons, he, long before the passage of said ordinance, at great expense, purchased and now owns twenty-two acres of land in the county of San Mateo, on which he has erected buildings which he uses as a home or asylum for them; but such buildings are not fire proof or of the character designated and required by the ordinance, and are also situated within four hundred yards of the dwellings of other persons. The petitioner further alleges that he treats in the asylum established by him both male and female persons suffering from any and all nervous diseases and from mild forms of insanity, such as melancholia, dementia, and hysteria, but that he does not knowingly admit or treat violent or dangerous cases.

It is claimed by the petitioner that the provisions of the ordinance above set out impose unreasonable restrictions upon

his right to prosecute a lawful business and to devote his prop-
erty to a lawful use, and that such provisions are therefore in
conflict with the constitution of the United States and of this
state, and are for this reason void.

Upon the other hand, the respondent contends that the ordi-
nance is a police regulation, designed among other things to
protect the patients in such asylums from the danger which
might result to them from fire, and also to promote the com-
fort and peace of the community in which such an asylum may
be located by requiring insane patients to be confined within
walls, and so prevented from coming in contact with people
who are entitled to be free from such annoyance; and it is
further said that the nature of the business conducted in such
an asylum or hospital is such as to justify a regulation that it
shall only be carried on in a building removed from the dwell-
ings of others; and in this connection it is argued that the
ordinance does not in either of its requirements conflict with
any general law, and that the court is not authorized to declare
it invalid because in its judgment the ordinance may be deemed
unreasonable.

The police power — the power to make laws to secure the
comfort, convenience, peace and health of the community — is
an extensive one, and in its exercise a very wide discretion as to
what is needful or proper for that purpose is necessarily com-
mitted to the legislative body in which the power to make such
laws is vested. (*Ex parte Tuttle*, 91 Cal. 589.)

But it is not true that when this power is exerted for the
purpose of regulating a business or occupation, which in itself
is recognized as innocent and useful to the community, the
legislature is the exclusive judge as to what is a reasonable and
just restraint upon the constitutional right of the citizen to pur-
sue such business or profession. As the right of the citizen to
engage in such a business or follow such a profession is pro-
tected by the constitution, it is always a judicial question
whether any particular regulation of such right is a valid exer-
cise of legislative power. (Tiedeman's Limitation of Police
Power, secs. 85, 194; *State* v. *Jersey City*, 47 N. J. L. 286;
*Commonw.* v. *Robertson*, 5 Cush. 438; *Austin* v. *Murray*, 16
Pick. 121.) This principle is stated very forcibly in the case

of *Mugler* v. *Kansas*, 123 U. S. 661, in the following language:
"The courts are not bound by mere forms, nor are they to be
misled by mere pretenses. They are at liberty — indeed, are
under a solemn duty — to look at the substance of things when-
ever they enter upon the inquiry whether the legislature has
transcended the limits of its authority. If, therefore, a statute
purporting to have been enacted to protect the public health,
the public morals, or the public safety has no real or substan-
tial relation to those objects, or is a palpable invasion of rights
secured by the fundamental law, it is the duty of the courts to
so adjudge, and thereby give effect to the constitution."

And so also in the *Matter of Jacobs*, 98 N. Y. 108; 50 Am.
Rep. 636, Earl, J., in delivering the opinion of the court in
that case, said in relation to the power of the legislature to
make police regulations: "The limit of the power cannot be
accurately defined, and the courts have not been able or willing
definitely to circumscribe it. But the power, however, broad
and extensive, is not above the constitution. When it speaks
its voice must be heeded. It furnishes the supreme law and
guide for the conduct of legislators, judges, and private persons,
and so far as it imposes restraints, the police power must be
exercised in subordination thereto."

And this necessary-limitation upon the power of the legisla-
ture to interfere with the fundamental rights of the citizen in
the enactment of police regulations, was recognized by this
court in *Ex parte Sing Lee*, 96 Cal. 354, in which case we said
that the personal liberty of the citizen and his rights of prop-
erty cannot be invaded under the disguise of a police regulation.

This power of the courts, however, to declare invalid what
they may deem an unreasonable legislative regulation of a busi-
ness or occupation which the citizen has the constitutional right
to follow, although undoubted, must from the nature of the
power be exercised with the utmost caution, and only when it
is clear that the ordinance or law so declared void passes
entirely beyond the limits which bound the police power, and
infringes upon rights secured by the fundamental law.

The true rule upon this subject is thus expressed by the
supreme court of the state of Missouri in the case of *St. Louis*
v. *Weber*, 44 Mo. 542; 100 Am. Dec. 324: "In assuming,

however, the right to judge of the reasonableness of an exercise of corporate power, courts will not look closely into mere matters of judgment where there may be a reasonable difference of opinion. It is not to be expected that every power will always be exercised with the highest discretion, and when it is plainly granted, a clear case should be made to authorize an interference upon the ground of unreasonableness."

With this general statement of the power and duty of the court, we proceed to consider whether the ordinance before us is a valid regulation of the right to maintain such an asylum or hospital as the petitioner alleges he is now conducting in the county of San Mateo.

The state may, of course, make proper laws for the care, government, and safe-keeping of the unfortunate insane within its limits. This duty it owes, not only to those who are thus rendered incapable of taking care of themselves, but also to the community at large, the members of which are entitled to protection from the acts of persons not subject to the commands of reason. (*Matter of Colah*, 3 Daly, 529; Brown on Insanity, sec. 6.)

In the discharge of this duty the state has provided public asylums, to which persons who are so far disordered in mind as to be dangerous to remain at large may, upon satisfactory proof of such condition of mind, be committed by the judge of a superior court, but it has made no provision at all for those of unsound mind who are not regarded as dangerous to themselves or to the property or persons of others; and even as to those who are insane to such a degree that they may under the law be committed to the state asylum, the statute provides that "the kindred or friends of an inmate of the asylum may receive such inmate therefrom on their giving satisfactory evidence to the judge of the court issuing the commitment, that they, or any of them, are capable and suited to take care of and give proper care to such insane person, and give protection against any of his acts as an insane person." (Section 19 of "An act to provide for the future management of the Napa State Asylum for the Insane," approved March 6, 1876, Stats. of 1875–1876, p. 133.)

It will thus be seen that it was not the intention of the

legislature, in providing public asylums for the insane, to deprive the kindred and friends of even dangerous lunatics of the privilege of caring for them elsewhere, upon showing their ability and willingness to do so; while as to those not regarded as dangerous to themselves or others, the law does not contemplate that they shall be confined in such asylums at all. But unfortunate persons belonging to this latter class are not to be denied the right to receive the patient attention and often healing treatment of a comfortable private asylum or hospital, if they or their kindred or friends are able and willing to incur the expense of such care and treatment. The business therefore of conducting a private asylum, in which proper care can be given to such persons by a member or members of the medical profession having experience and special skill in the treatment of such cases, is a necessary and humane one; and the right to maintain such an asylum or hospital, and to follow and practice this particular branch of the medical profession, cannot be prohibited or burdened with unreasonable and oppressive conditions.

In our opinion the ordinance now under consideration imposes arbitrary and wholly unnecessary conditions upon the right to maintain such an asylum as that which petitioner alleges he is now conducting. While it is doubtless true that the board of supervisors of a county have the power, in the absence of any general legislation upon the subject, to prescribe by ordinance proper regulations for the protection of the patients in such an asylum from the danger which might result to them from the destruction of the asylum building by fire, still the requirement that such hospital or asylum shall be maintained only in a building constructed of either brick and iron, or iron and stone, without any reference to the size of such building, or the number of patients it is designed to accommodate therein, and without regard to other safe-guards against fire with which it may be provided is clearly unreasonable. It may be conceded that there would be less danger from fire in a building of the character required by the ordinance than in one differently constructed, but experience has not shown that the danger from fire in such a hospital is such an imminent peril, when reasonable care is taken to guard against it, as to justify a requirement that

XCVIII. CAL.—6

such hospital shall be conducted only in a building made from the materials named in the ordinance. In the management of a hospital where insane persons are treated, it is necessary and it must be presumed that there will be a sufficient number of competent attendants to prevent danger or damage from any unreasonable actions of such insane persons. Without such attendants no such asylum or hospital could be properly conducted. The fact, however, that a person is suffering from an insane delusion requiring treatment does not necessarily make him dangerous to himself or others, or render inactive in him the ordinary instincts which prompt self-preservation. On the contrary, as was said by Mr. Justice Cooley in his opinion in the case of *Van Duzen* v. *Newcomer*, 49 Mich. 129: "Many insane persons, even after they have become hopelessly so, are to all appearance perfectly harmless, and for years continue to discharge the common duties of life in the most regular and acceptable manner, being trusted by every one in those particulars to which the insane delusion does not extend. The law takes notice of the fact that in many cases the disease leaves the person in the responsible possession and control of most of his faculties, and that the same motives influence his action in the employment of them that influence those not afflicted."

It is the duty of the superintendent or attending physician of such an asylum to ascertain the nature of the delusion affecting any person received for treatment; and if there should be one admitted afflicted with pyromania, or whose actions would for any reason be difficult to control, it cannot be assumed that such person would not be properly guarded, or that the hospital would not be managed with that degree of prudence which would render the patients therein reasonably safe from danger on account of fire. Legislation of this character, which imposes an onerous burden of expense upon a lawful and highly meritorious business, cannot be justified by the mere possibility of the danger which it ostensibly seeks to avert. It must rest upon the fact that experience has demonstrated that such danger, in the absence of such legislative regulation, is one which may reasonably be anticipated as the probable result of conducting such business, notwithstanding the exercise of ordinary care to prevent it.

The provision that no asylum, in which persons suffering
from any degree of insanity are treated, shall be permitted
within four hundred yards of any dwelling or school, cannot in
our judgment be sustained as a lawful police regulation.   A
law or ordinance, the effect of which is to deny to the owner
of property the right to conduct thereon a lawful business, is
invalid unless the business to which it relates is of such a
noxious or offensive character that the health, safety, or comfort
of the surrounding community requires its exclusion from that
particular locality, and an asylum for the treatment of mild
forms of insanity is not properly classed as such.  If rightly
conducted such asylum would not render the occupation of
dwellings or schools in its neighborhood uncomfortable to such
a degree that its maintenance would be deemed a nuisance, or
any impairment of the substantial rights of occupants of such
dwellings or schools.   It is not like a private asylum for the
confinement of dangerous lunatics, or a hospital for the treat-
ment of loathsome or contagious diseases; and the reasons which
make it necessary and proper to exclude from the thickly settled
portions of cities and towns slaughter-houses, soap factories, and
tanneries, with their offensive smells; magazines for the storage
of powder, and powder mills, with their attendant dangers, or
any business or occupation which seriously interferes with the
health or comfort of others if permitted in such localities, do
not apply to a hospital, whose inmates are harmless, although
insane.   It is possible that the maintenance of such an asylum
would be to some people in its vicinity disagreeable and annoy-
ing, in the sense that it would be more or less repulsive to them;
but this is not enough to justify a regulation like that under
consideration.   There are many unpleasant and even annoying
things which must be borne by persons living in a state of
organized society, in order that others may also enjoy their
equal rights under the law.

The ordinance further denies to any one the right to conduct
such an asylum, unless the building or buildings used for that
purpose, and the grounds to which the insane persons may be
allowed access, shall be surrounded by a brick or stone wall, at
least twelve feet high and eighteen inches thick.  The erection
of such a wall would be costly, rendering the buildings and

surrounding grounds uninviting and unsightly to the eye, and would be a manifest injury to the unfortunate persons placed therein for care and treatment. This requirement of the ordinance cannot be defended upon the ground that it is reasonably necessary for the protection of the public. Whatever justification there might be for such a provision, if applied only to a private asylum in which dangerous lunatics are to be confined, it is plainly unreasonable when applied to a hospital of the character maintained by the petitioner, where only persons suffering with mild forms of insanity, and who are harmless, are received. Such persons, if properly attended, do not require prison walls to restrain them, and it would be barbarous and inhuman to subject them to such treatment. The board of supervisors of a county, or the legislative department of any city or town in which such an asylum is erected, may, undoubtedly, provide by ordinance that patients therein shall not be permitted to leave the grounds upon which it is erected, unless accompanied by an attendant, and may impose a proper penalty upon the superintendent or keeper of such asylum for a failure to conform to such regulation. Such an ordinance would be reasonable, and at the same time afford all necessary protection to the public without conflicting with the rights of any one.

The ordinance further provides that only one of the classes of persons therein mentioned shall be treated in the same building, and that a separate license shall be required for the treatment of each of the diseases named, and that male and female patients shall not be " cared for or treated in the same building." These provisions are clearly invalid. The treatment of inebriates, and insane persons, and of mental and nervous diseases not amounting to insanity, is a special branch of practice in the medical profession, and no reason exists why a physician desiring to maintain an asylum, or hospital, for the treatment of such cases should be required to erect separate buildings for the treatment of persons suffering from each of such diseases. Such a requirement is an unnecessary interference with the business of maintaining such an asylum, without any corresponding benefit to the public. If it be said that the welfare of the patients may demand this separation; that persons suffering from nervous

prostration, for instance, should not be treated in the same building with the insane, the answer is that this is a matter which may be safely left to the judgment of the physician whose business it is to treat such cases, and whose education and experience, it must be presumed, qualify him to superintend such an asylum. The power to pass upon such a question has not been committed to boards of supervisors of the different counties, and such a regulation of the manner of conducting the business of maintaining such a private asylum is, therefore, unauthorized and void. In relation to that part of the ordinance requiring the separation of the sexes, it is sufficient to say that the admission of male and female patients to a private asylum, or hospital, conducted in one building, is not immoral, *per se*, nor can it be made so by any legislative declaration.

It is unnecessary to further discuss the provisions of this ordinance, or to pass upon other objections which have been urged against it. Viewed separately, we think each provision discussed in this opinion invalid, and when the ordinance is considered as a whole, the invalidity of each provision becomes more plainly apparent. The ordinance covers completely and entirely the business of maintaining such an asylum as petitioner alleges he is now conducting, and imposes upon it such burdensome, oppressive, and unreasonable conditions as in effect to amount to its prohibition.

The case has been argued here both orally and in the briefs of counsel with great learning and ability, and we have given to the questions involved the careful consideration which their importance demands, and our conclusion is: 1. That it is competent for the court to determine whether any particular regulation of a useful business or occupation is a reasonable restriction upon the constitutional right of the citizen to engage in such business, or follow such occupation. 2. That the business of maintaining a private asylum for the treatment of mild forms of insanity, and of persons afflicted with other diseases named in the ordinance before us, is a lawful one which cannot be prohibited either directly or indirectly. 3. That the ordinance which petitioner is accused of violating is in each and all of the provisions referred to in this opinion unreasonable, and

therefore void. It follows that the petitioner is entitled to be discharged.

Petitioner discharged.

McFARLAND, J., PATERSON, J., GAROUTTE, J., HARRISON, J., and FITZGERALD, J., concurred.