[Crim. No. 887. First Appellate District, Division Two.—March 19, 1920.]

In the Matter of the Application of F. A. DEES for a Writ of Habeas Corpus.

[1] WORDS AND PHRASES—TICKET PEDDLER DEFINED.—A ticket peddler is one who, without selling at a fixed place of business, sells singly or in small quantities theater tickets or other tickets along the street, or by going from house to house, or place to place, offering them for sale.

[2] STATUTES—ABSURD CONSTRUCTION.—A criminal statute is not to be given a construction which leads to absurdity.

[3] CONSTITUTIONAL LAW—DOING OF LAWFUL ACT—DEPRIVATION OF LIBERTY.—A man may not be deprived of his liberty for the doing of an act which is not and cannot be made unlawful.

[4] MUNICIPAL CORPORATIONS—POWER TO IMPOSE LICENSE TAX.— Although a municipality may provide either for a license tax for revenue to be laid upon a business, or, in the exercise of its police power, for a regulatory license for such business, it cannot, under either the power to tax or the power to regulate a business, make unlawful a single sale without a license of an article which is lawfully sold by others without a license.

[5] ID.—EXERCISE OF POWER OF TAXATION—CONSTRUCTION.—In the exercise of the prerogative power either of taxation or of regulation of callings, every reasonable doubt must be resolved in favor of the citizen.

[6] ID.—VALIDITY OF LEGISLATIVE ENACTMENT—DUTY OF COURT TO EXAMINE SUBSTANCE.—In determining whether the legislative body has transcended the limit of its authority in imposing a particular license tax, the court is at liberty to look at the substance, and is not bound by the fact that it purports to be a revenue measure.

[7] ID.—SAN FRANCISCO LICENSE ORDINANCE — SALE OF THEATER TICKETS—UNLAWFUL REVENUE MEASURE.—Considered as a revenue measure, section 58 of Ordinance No. 3361, New Series, of the city and county of San Francisco, requiring a ticket peddler's license to sell theater, opera, or amusement tickets at other than the office of the management of the theater or place of amusement, cannot be upheld, as it provides for a tax upon single sales

---

4. Power of municipal corporations to impose license fees, note, 2 Ann. Cas. 313.

6. Constitutional limitation on power to impose license or occupation taxes, note, 129 Am. St. Rep. 249.

and not upon a business and is directed to a mode of selling without consideration either of essential differences in modes or the volume of business transacted.

[8] ID.—UNLAWFUL INTERFERENCE WITH LIBERTY OF CITIZENS—AB-SENCE OF REASONABLE BASIS.—As a police measure, section 58 of Ordinance No. 3361, New Series, of the city and county of San Francisco, requiring a ticket peddler's license to sell theater, opera, or amusement tickets at other than the office of the management of the theater or place of amusement, is an unwarranted inter-ference with the liberty of citizens of the state and the United States, not based upon any reasonable consideration of the public health, morals, or safety, nor of the cost of police supervision.

APPLICATION for a Writ of Habeas Corpus. Petitioner ordered discharged.

The facts are stated in the opinion of the court.

Samuel Knight and F. Eldred Boland for Petitioner.

I. M. Golden, Assistant District Attorney, for Respondent.

BRITTAIN, J.—The petitioner was arrested for viola-tion of section 58 of Ordinance No. 3361, New Series, of the city and county of San Francisco, which is designated as "Imposing License Taxes on certain Businesses, Callings, Trades or Employments," etc. Section 58 is as follows:

"It shall be unlawful for any person to sell in the City and County of San Francisco any theater ticket or opera ticket, or ticket of admission to a place of amusement or entertainment at any place other than the office of the man-agement of said theater, place of amusement or entertain-ment, without having first taken out and obtained a license to be known as a Ticket Peddler's License.

"Said license shall be issued by the Tax Collector at the rate of three hundred (300) dollars per month for each license.

"Every person having a Ticket Peddler's License, and every person engaged in the business of peddling theater, opera or amusement tickets, shall on the demand of any officer of the Tax Collector's Department, or peace officer, produce and exhibit the same."

At the time of his arrest the petitioner was an employee of the Van Noy Interstate Company, a corporation operat-

ing news-stands in two of the principal hotels in San Francisco, where theater tickets are sold. The sole question presented is whether or not the section in question can be sustained as a lawful exercise of the taxing power of the municipality. It is not contended by the city that the enactment was in the exercise of the police power, but that since it purports to be a revenue measure based upon a business classification, the amount of the tax is a matter of legislative concern with which the judicial branch of the government will not interfere.

The petitioner contends, in substance, that the section is in fact such a regulatory measure as to involve the police power rather than the taxing power, and that it cannot be supported as a proper exercise of either. Under these contentions it becomes necessary, in the first instance, to determine whether or not the section is a revenue measure based upon a reasonable business classification.

The ordinance of which this section is a part defines fifty-seven different callings and segregates many of these in classes based on the amount of business transacted or facilities used. Concerning the persons engaged in the business defined in every one of these classes and subclasses, there is a direct enactment that they shall pay some fixed sum per day, month, quarter, or year. By section 1, the tax is made recoverable by the municipality as a debt, and the further provision is made that "Nothing herein shall bar or prevent a criminal prosecution for each and every violation of any ordinance." The words confining the clause to license ordinances are implied from the context. In the fifty-seven sections dealing with other callings there is a direct tax laid on the business upon payment of which the license issues as a token showing the tax to have been paid. In section 58 alone is the procurement of the ticket peddler's license the principal thing required. It is to be issued at the rate of three hundred dollars per month. It is not required to be renewed monthly, nor is it clearly provided that it may not be issued at the statutory rate for a shorter period than one month. While those engaged in the business of peddling theater tickets are required, on demand, to exhibit the license, there is no statutory definition of the business of ticket peddling.

The term "peddler" in common speech, as well as in law, has a well-understood meaning, involving the idea of itinerancy or of going from house to house, or from place to place. It is so defined in the dictionaries and in countless decisions under all manner of police regulations and license laws. (6 Words & Phrases, pp. 5260–5267; Id., 2d series, vol. 3, pp. 937–941.) One who sells at a fixed place is not a peddler. (*Gould* v. *City of Atlanta,* 55 Ga. 678–687; *Delisle* v. *City of Danville,* 36 Ill. App. 659–662; *State* v. *Hodgden,* 41 Vt. 139–141; *Randolph* v. *Yellowstone Kit,* 83 Ala. 471, [3 South. 706, 707]; *State* v. *Bayer,* 34 Utah, 257, [19 L. R. A. (N. S.) 297, 97 Pac. 129–131].) **[1]** In terms of law or of ordinary language a ticket peddler is one who, without selling at a fixed place of business, sells singly or in small quantities theater or other tickets along the street, or by going from house to house, or from place to place, offering them for sale. It is not contended that the petitioner was so engaged in the business of peddling tickets at the time of or before his arrest. On the other hand, it appears that all he did was to sell tickets for, and at the fixed place of business of, his employer. In the absence of a restricted or enlarged meaning being given by statute to the phrase "engaged in the business of peddling theater tickets," on the admitted facts it does not appear that the petitioner was arrested, nor that he can be held under that provision of the section which in terms requires one engaged in the business of ticket peddling to exhibit his license. He must, therefore, be held, if at all, for selling tickets without having procured a ticket peddler's license.

It is a matter of common knowledge that itinerant venders of tickets go from house to house and from office to office offering for sale tickets for all manner of entertainments. Such venders are ticket peddlers, but they are not necessarily engaged in the business of peddling tickets. They may be and usually are offering tickets for a day or two only in aid of some charitable or amateur entertainment. The section under consideration provides that if *any* person shall sell *any* ticket to a place of entertainment, at *any* place other than the place of business of the management of the place of entertainment, the act shall be unlawful, unless a ticket peddler's license is first procured at the rate of three hundred dollars per month. Section 1 of the ordi-

nance makes *any* violation of its terms punishable as a crime.
[2-3] While a criminal statute is not to be given a construction which leads to absurdity, nothing is better settled than that a man may not be deprived of his liberty for the doing of an act which is not and cannot be made unlawful.
[4] Although the municipality may provide either for a license tax for revenue to be laid upon a business, or, in the exercise of its police power, for a regulatory license for such business, it cannot under either the power to tax or the power to regulate a business make unlawful without a license a single sale of an article which is lawfully sold by others without a license. There is no difference in principle between the resale of theater tickets and the resale of ready-made clothing. It may be conceded that a special license to sell such clothing may not be required of the first distributor and that such a license may be required of one engaged in the business of selling cast-off garments, but no one could be held for the commission of a crime under a statute which purports to make unlawful a sale of an old suit of clothing by its owner to the second-hand dealer without first procuring a license.

[5] In the exercise of the prerogative power either of taxation or of regulation of callings every reasonable doubt must be resolved in favor of the citizen. (*Treat* v. *White*, 181 U. S. 264, [45 L. Ed. 853, 21 Sup. Ct. Rep. 611, see, also, Rose's U. S. Notes].) [6] In considering the particular enactment the fact that it purports to be a revenue measure is not conclusive. "The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under the solemn duty—to look at the substance of things whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety has no real or substantial relation to those objects, or is a palpable invasion of rights secured by fundamental law, it is the duty of courts to so adjudge, and thereby give effect to the constitution." (*Mugler* v. *Kansas,* 123 U. S. 661, [31 L. Ed. 205, 8 Sup. Ct. Rep. 297, see, also, Rose's U. S. Notes]; *Ex parte Whitwell,* 98 Cal. 78, 79, [35 Am. St. Rep. 152, 19 L. R. A. 727, 32 Pac. 870].) With what greater force does this reasoning

apply in a case where the enactment purports to be a reve-
nue measure, while it is in substance a prohibitive statute,
or at least a regulatory one, as this so plainly appears to be.

[7] Considered as a revenue measure, the section under
consideration, if it provides for any tax, provides for one
upon single sales and not upon a business. It further is di-
rected to a mode of selling without consideration either of
essential differences in modes or the volume of business
transacted. It cannot be upheld as a revenue measure for
these reasons. (*Merced County* v. *Helm*, 102 Cal. 159–166,
[36 Pac. 399]; *Ex parte Richardson*, 170 Cal. 68, [148 Pac.
213].) [8] As a police measure it is an unwarranted in-
terference with the liberty of citizens of the state and the
United States, not based upon any reasonable considera-
tion of the public health, morals, or safety, nor of the cost
of police supervision. (*Ex parte Whitwell*, 98 Cal. 73, [35
Am. St. Rep. 152, 19 L. R. A. 727, 32 Pac. 870]; *People* v.
*Quarg*, 149 Cal. 79–81, [117 Am. St. Rep. 115, 9 Ann. Cas.
747, 5 L. R. A. (N. S.) 183, 84 Pac. 766].)

It follows that the petitioner is entitled to be discharged,
and it is so ordered.

Langdon, P. J., and Nourse, J., concurred.