[Civ. No. 943. First Appellate District, Division Two.—November 13, 1920.]

## In the Matter of the Application of F. A. DEES for a Writ of Habeas Corpus.

[1] MUNICIPAL ORDINANCE — SAN FRANCISCO — RESALE OF THEATER TICKETS—LICENSE—UNLAWFUL EXERCISE OF POLICE POWER.—The provision of the general license ordinance of the city and county of San Francisco making it unlawful for any person "to engage in the business" of selling theater tickets at any place other than at the office of the theater without first taking out and obtaining a ticket peddler's license to be issued by the tax collector at the rate of three hundred dollars per month, cannot be upheld as an exercise of the police power, since it constitutes an unwarranted interference with the liberty of citizens of the state and of the United States, not based upon any reasonable consideration of public health, morals, or safety, nor of the cost of police supervision.

[2] ID.—SALE OF THEATER TICKETS AT FIXED PLACE OF BUSINESS— IMPOSITION OF LICENSE TAX — LACK OF POWER — CHARTER.— Theater tickets are "goods" within the meaning of the phrase "goods, wares and merchandise" contained in the proviso of section 15, article II, chapter 2 of the charter of the city and county

---

1. Validity of ordinance licensing ticket brokers, note, 9 **Ann. Cas.** 972.

Validity of statutes prohibiting scalping of theater tickets, note, 9 **Ann. Cas.** 749.

of San Francisco, declaring that no license taxes shall be imposed upon any person who, at any fixed place of business, sells or manufactures goods, wares, or merchandise, except such as require permits from the board of police commissioners as provided in the charter, and the board of supervisors is therefore without power to exact a license tax on those selling theater tickets at a fixed place of business.

[3] Id.—Invalidity of Ordinance Provision as Revenue Measure.— The provision of the general license ordinance of the city and county of San Francisco making it unlawful "to engage in the business" of selling theater tickets at any place other than the office of the theater without first obtaining a license at the rate of three hundred dollars per month cannot be upheld as a revenue measure, since it is not based on any reasonable distinction, but is unfair and oppressive, if not in fact prohibitory.

APPLICATION for a Writ of Habeas Corpus to secure release from arrest for violation of provision of license ordinance relating to resale of theater tickets. Petitioner discharged.

Samuel Knight and F. Eldred Boland for Petitioner.

Matthew Brady, District Attorney, and Jos. T. O'Connor, Assistant District Attorney, for Respondent.

BRITTAIN, J.—The determination of this matter depends on the validity of a recent amendment to the San Francisco License Ordinance and particularly to the section thereof relating to the resale of theater tickets, for the violation of which the petitioner was arrested.

On behalf of the municipality it is maintained that the provisions of the ordinance were adopted by the local legislative body in the exercise of its admitted power to raise revenue by taxation, and that the courts cannot interfere with the exercise of this power. The petitioner, on the other hand, contends that the provisions in question were not adopted under the power to tax, but constitute an unlawful exercise of the police power, and further, that even considered as a revenue measure, the section of the ordinance under consideration cannot be upheld.

The frequent application to courts of this and other states to adjudicate upon similar license provisions, as well as the common experience of the great mass of people who

travel and who attend theatrical performances, have made notorious the fact that it is the custom of so-called ticket speculators to buy in advance numbers of desirable reserved seat tickets for popular performances and to resell them at greatly advanced prices to those who desire to attend the performances, and the equally well-known fact that in large cities at the principal hotels patrons thereof may usually buy reserved seat tickets for the local theaters at a trifling advance over the advertised price of such tickets. However annoying it may be to one desiring to attend a play to be compelled to be satisfied with an undesirable seat, or to pay an excess price for a seat where he may see and hear what is going on upon the stage, it has been said by the supreme court that "The sale of a theater ticket at an advance upon the original purchase price, or *the business of reselling* such tickets at a profit, is no more immoral or injurious to the public welfare or convenience than is the sale of any ordinary article of merchandise at a profit." (*Ex parte Quarg*, 149 Cal. 81, [117 Am. St. Rep. 115, 9 Ann. Cas. 747, 5 L. R. A. (N. S.) 183, 84 Pac. 767].)

From the petition it appears, and upon this proceeding it is admitted by the return, that the petitioner at the time of his arrest was employed by the Van Noy Interstate Company, a corporation, and as such employee was in charge of its business, which business was described as conducting, among other things, the news-stands or stores located in the Palace and St. Francis Hotels in San Francisco, paying for the privilege of conducting that business; that a part of that business conducted at said hotels is the selling of theater tickets to guests of said hotels for admission to various theaters in San Francisco, as a necessary prerequisite to its occupancy of the news-stands, and that it is a convenience to the guests of said hotels. It was similarly alleged and similarly admitted that the corporation charges in addition to the price of the ticket and the revenue tax thereon the sum of twenty-five cents for each ticket and no more, and that the gross income from the sale of tickets has not been, and is not now, in excess of the sum of $600 per month.

From a reference in the respondent's brief it appears the same petitioner was arrested, and on a proceeding

similar to this was discharged under the provisions of the ordinance prior to the amendment now under consideration. (*In re Dees,* 46 Cal. App. 656, [189 Pac. 1050].) It was determined that the ordinance as it then read was invalid. The only difference between the section of the ordinance then under consideration and the section now before the court is that before the change it purported to make it unlawful for any person to *sell* any theater ticket, except at the office of the theater, without obtaining a ticket peddler's license, and it now purports to make it unlawful for any person to *engage in the business* of selling tickets elsewhere than at the office of the theater without obtaining a ticket peddler's license. The amount of the license charge is the same—$300 a month. By the amendment, one of the objections to the validity of the former ordinance was met. It was not necessary to the determination of the matter then before the court to consider the other objections, which were then urged and are now urged against its validity. [1] For reasons stated in the former proceeding, the ordinance under consideration cannot be upheld as an exercise of the police power. (*In re Dees,* 46 Cal. App. 656, [189 Pac. 1050].) It constitutes an unwarranted interference with the liberty of citizens of the state and of the United States, not based upon any reasonable consideration of the public health, morals, or safety, nor of the cost of police supervision. (*Ex parte Quarg,* 149 Cal. 79, [117 Am. St. Rep. 115, 9 Ann. Cas. 747, 5 L. R. A. (N. S.) 183, 84 Pac. 766]; *Ex parte Whitwell,* 98 Cal. 73, [35 Am. St. Rep. 152, 19 L. R. A. 727, 32 Pac. 870].)

"Any attempt on the part of the state, or of the county as one of the subdivisions of the state, to take the property of an individual for public purposes by way of taxation, must find an express statutory warrant, and all laws having this object are to be construed strictly in favor of the individual and against the state." (*Merced County* v. *Helm,* 102 Cal. 165, [36 Pac. 400].)

The power to impose license taxes is vested in the board of supervisors by section 15, article II, chapter 2 of the charter, and is limited by the proviso reading as follows: "but no license taxes shall be imposed upon any person who, at any fixed place of business in the city and county, sells or manufactures goods, wares or merchandise, except

such as require permits from the board of police commissioners as provided in this charter." There is nothing in the charter requiring permits from the board of police commissioners to sell or resell theater tickets (*Rapp* v. *Kiel*, 159 Cal. 702, [115 Pac. 651].) Under the rule announced in *Merced County* v. *Helm, supra,* the charter power is to be construed strictly in favor of the individual. It is admitted that the petitioner, as the employee of the Van Noy Interstate Company, was selling theater tickets at a fixed place of business. While the supreme court in the Quarg case, *supra,* in a manner drew a distinction between theater tickets and ordinary articles of merchandise, it did not, and was not, called upon to consider whether theater tickets are "goods" within the meaning of the phrase, "goods, wares and merchandise." [2] No direct decision upon this question has been found, but there is ample authority for so holding. The word "goods" in the phrase has been defined as "movable property" (*Vawter* v. *Griffin*, 40 Ind. 600); "every species of property which was not real estate or freehold." (*In re Gay's Gold,* 80 U. S. (13 Wall.) 362, [20 L. Ed. 606, see, also, Rose's U. S. Notes]); "any personal property of which larceny may be committed" (*State* v. *Brooks,* 4 Conn. 449); "personal property" (*French* v. *Schoonmaker,* 69 N. J. L. 6, [54 Atl. 225].) It has been held to include money (*Hall* v. *State,* 3 Ohio St. 576; *United States* v. *Candace,* 25 Fed. Cas. 280; *The Elizabeth and Jane,* 8 Fed. Cas. 473; *Patton* v. *Brady,* 184 U. S. 608, [46 L. Ed. 713, 22 Sup. Ct. Rep. 493, see, also, Rose's U. S. Notes]); shares of stock (*Boardman* v. *Cutter,* 128 Mass. 390; *Banta* v. *Chicago,* 172 Ill. 204, [40 L. R. A. 611, 50 N. E. 237]); a newspaper (*Smith* v. *Wilcox,* 24 N. Y. 358, [82 Am. Dec. 302]); a promissory note (*New England etc. Co.* v. *Commonwealth,* 195 Mass. 385, [11 Ann. Cas. 678, 81 N. E. 385]; *Baldwin* v. *Williams,* 3 Met. (Mass.) 367); and a lottery ticket (*Yohe* v. *Robertson,* 2 Whart. (Pa.) 162). The conclusion that the required power to collect the license fee on the business of selling theater tickets, they being goods, not only is not found in the charter, but is expressly withheld from the municipality, finds further support in the fact that a proposal to amend the charter in this particular was defeated at the recent general election.

Even though the power to license for revenue be upheld, it is not a power to prohibit. The question of whether or not the ordinance is so unreasonable in character as to transcend the proper exercise of the law-making power is one to be determined by the court. (*Merced County* v. *Fleming*, 111 Cal. 50, 51, [43 Pac. 392].) While, as a general rule, the power to tax may be exercised by the legislative authority without interference by courts, it is subject to many exceptions. So, also, is the general rule that for the purpose of collecting revenue the legislature may classify different trades and business activities, and may impose widely variant license taxes. In a case where the ordinance purported to fix a license of $100 per quarter for merchants doing a business of $250,000 per quarter, if their goods were actually in the city or in transit to it, but a license of $2,000 on the same merchants whose goods were not in the city or in transit, the supreme court in determining against the validity of the license, quoted with approval a statement from Dillon's Municipal Corporations, as follows: "An ordinance passed under a general authority of this nature must be, first, 'reasonable, consonant with the general powers and purposes of the corporation, and not inconsistent with the laws or policy of the state'; second, it must not be oppressive; third, it must be impartial, fair and general; fourth, it may regulate but must not restrain trade." (*Ex parte Frank*, 52 Cal. 609.) In a recent case decided by the supreme court, in a learned opinion written by Mr. Chief Justice Angellotti, in which the ordinance in question was declared to be a taxing ordinance, and in which both general rules relied on by the respondent here were declared, and their proper limits defined, it was held that the license on merchants operating vending machines was a tax "solely on the mode of making his sales and deliveries, without any reference to the amount of business done." Recognizing the power of the taxing body to classify, it was held to be based on an unreasonable classification. (*In re Richardson*, 170 Cal. 73, [148 Pac. 213].)

The ordinance now under consideration is the general license ordinance of San Francisco. By section 1 it provides that every person, firm, or corporation now or hereafter liable to pay a license tax shall be liable to civil action;

by section 2, the license tax shall be due and payable quarterly in advance at the office and to the tax collector; by section 3, that licenses shall not be transferred, and there are other general sections applicable to all licenses which have no bearing on the question involved in this application. From sections 78 to 89, inclusive, are definitions of different classes of businesses and specifications of the amounts to be paid for licenses. Section 90 provides for conviction of a misdemeanor for violators of the ordinance, and there are certain other general provisions. It is admitted by the return that the total gross income of the Van Noy Interstate Company from this business was not in excess of $600 per month, or less than $2,000 per quarter. The ordinance provides a license of $30 per quarter, or $10 a month to be paid by express agents whose gross profits are between $1,500 and $2,500 per quarter; mercantile agencies, whose gross receipts do not exceed $3,000 per quarter, are required to pay a license of $15 per quarter, or $5 per month; real estate agents, whose commissions are less than $5,000 per quarter, pay a license of $10 a quarter; proprietors of boarding-houses, lodging-houses, or apartment houses, whose gross receipts are between $1,000 and $3,000 per quarter, pay a tax of $5; assayers, whose gross commissions are less than $6,000 per quarter, pay a tax of $10; auctioneers, whose sales amount to less than half a million dollars annually, pay an annual tax of $200, while ticket peddlers, if they be ticket peddlers, are required to pay $300 a month. The tax of garage proprietors is based on the amount of floor space occupied, and ranges from $12.50 to $25 per quarter; dealers in second-hand automobiles pay a tax of $50 per quarter; proprietors of baseball fields pay a tax of $150 per quarter; merchandise brokers doing business in any amount under $20,000 per quarter pay a tax of $10 per quarter. Stock brokers, whose gross profits are between $1,250 and $2,500 per quarter, pay a tax of $32; cycloramas and various amusement concerns, including skating-rinks, pay $20 to $40 per quarter; junk dealers, whose aggregate sales and purchases amount to less than $5,000, pay $12.50; itinerant venders are required to pay $100 per day for a license to be issued daily. There is no definition in this ordinance of itinerant venders, but the provision is declared to be inapplicable to commercial travelers or sell-

ing agents, hawkers on the street, peddlers from vehicles, and persons selling fruit, vegetables, butter, eggs, or other farm .or ranch products. In the opinion in the former *habeas corpus* proceeding of Dees it was pointed out that the word "peddler" implied itinerancy or the hawking of articles for sale upon the public streets. There is no suggestion in this case that the petitioner was in any sense a peddler or an itinerant vender. Peripatetic venders are not within the protection of section 15 of article II of the charter. A peddler does not sell at a fixed place of business and he is required to procure a permit from the board of police commissioners. (Charter, sec. 9, c. 3, art. VIII.)

Resuming the consideration of the taxes provided by the ordinance, it appears that bond brokers are required to pay $45 a quarter; public passenger vehicles, other than railroad cars, "jitneys," for instance, if limited to the capacity of three passengers, $3 a year; if five, $5 a year, and if from eight to ten persons, $20 a year; general peddlers pay taxes of $12 a quarter; second-hand dealers, $25 a quarter; theaters with a seating capacity of more than 1,450 people pay $600 a year for an annual license; $200 for a quarterly license, or $100 for a monthly license. With a seating capacity of 500 persons they pay a license of $100 per annum, as against a license of $3,600 per annum levied on those who resell theater tickets. Architects, attorneys, engineers, insurance adjusters, oculists, physicians, surgeons,. and other professional people whose annual gross receipts are from $7,500 to $10,000 a year are expected to pay a tax of $7.50 per quarter. Stock and bond brokers whose gross profits are less than $2,500 per quarter are taxed at $32; vaudeville houses, whose maximum charge is thirty-one cents or over, pay a license based on the seating capacity, ranging from $125 per quarter on a seating capacity of 500 to $300 per quarter on a seating capacity of 2,000. It is impossible to consider the wide disparity between a purported tax of $300 per month and the other taxes levied on other and somewhat kindred lines of business, without reaching the conclusion that, considered as a taxing ordinance, it is unreasonable, oppressive, lacking in impartiality, and unfair under the rules approved in *Ex parte Frank*, 52 Cal. 609.

While it will not be adjudged, except in a clear case, that an ordinance purporting to be a revenue measure is, in fact, an unlawful attempt to exercise a forbidden police power, "courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty, indeed, are under the solemn duty to look at the substance of things whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority." (*Mugler* v. *Kansas,* 123 U. S. 623, [31 L. Ed. 205, 8 Sup. Ct. Rep. 273, see, also, Rose's U. S. Notes]; *Ex parte Whitwell,* 98 Cal. 78, 79, [35 Am. St. Rep. 152, 19 L. R. A. 727, 32 Pac. 870].) In addition to the apparent excessive amount of the license fee imposed on this single line of business, when compared with every other license fee charged, the wording of the section relating to the sale of theater tickets is so different from that concerning other lines of business as to warrant the conclusion that it was designedly changed. It is fundamental that where one form of expression is used throughout a statute dealing with a number of things it will ordinarily be adjudged to have been used to achieve the same purpose. It is no less clear that if one of many things is singled out by a notable change of expression, it is reasonable to determine there was a different or modified purpose intended. In regard to every other kind of business the ordinance simply provides that those engaged in it shall pay a license tax. If they continue in business without paying the tax, it may be collected as a debt, or the dealer may be punished as for a misdemeanor for violating the ordinance. In section 70, alone, under the heading "Ticket Peddlers" it is declared in the first instance that "It shall be unlawful for any person . . . to engage in the business or occupation of selling any theater ticket at any other place than the office of the management of said theater," without first having taken out and obtained a license to be known as a ticket peddler's license. The license is to be issued by the tax collector at the rate of $300 per month for each license. The section then provides that "Every person having a Ticket Peddler's License, every person engaged in the business of peddling theater . . . tickets, shall, on the demand of any officer of the tax collector's department, or any peace officer, produce and exhibit the same." Not only was the

unlawfulness of the business first expressed, but it ·was sought by another deviation of the language used in other sections to reach mere employees of those engaged in the business. For instance, section 67 of the ordinance provides that "Every person, firm or corporation engaged in the business of slaughtering cattle" shall pay a license, but there is no attempt thereby to collect multiple taxes for the same general business by collecting similar taxes from every one engaged in the occupation of slaughtering cattle. This is not an immaterial distinction. In the present case it appears by the petition, and it is admitted by the return, that the petitioner was an employee of the Van Noy Interstate Company, and was arrested for engaging in the business *and occupation* of selling theater tickets in violation of the terms of the ordinance. In this connection, under the admitted facts, it may well be doubted whether it can be said in any proper sense that either the Van Noy Interstate Company or the petitioner was engaged in the business or occupation in terms prohibited except upon the condition of obtaining a ticket peddler's license. It is a matter of common knowledge that photographic hand cameras are sold at stationers', opticians', and drug stores. The · practically universal use of such cameras, and their frequent exchange for new or different ones, have led to equal notoriety of the custom of such dealers to accept old cameras, which are resold at reduced prices. No·one would seriously suggest that by thus rendering accommodation to the public, the well-known business of a drug-store, or of an optician, or of a stationer, was converted into that of a dealer in second-hand goods, and liable to payment of the license tax imposed by section 63 of the ordinance on persons "engaging in the business of buying, selling or exchanging second-hand goods."

The question of whether the provisions of section 70 constitute it a tax measure or not, in view of the enactment that the business shall be unlawful, except upon the condition of prior procurement of the ticket peddler's license, seems to have been answered adversely to the municipality, in a case where the question arose as to whether an exaction upon foreign corporations was or was not a tax, and the supreme court announced the principle that laws cannot be declared unconstitutional unless clearly so, but

said: "The principle is not disputed, . . . but it must not be pressed so far as to amount to an abdication of its functions on the part of the court nor a denial of justice to suitors. If we can clearly say that the law is beyond the power of the legislature, we must so declare.

"It is claimed that this is a sum paid by the corporation for the privilege of acting as such in this state, and, therefore, not a tax. The plausibility of the claim consists in apparently identifying this case with cases in which it is clear the exaction is a condition, and from which this is made to differ only in degree. *If the condition had been that the corporation should pay a fixed sum for the privilege before it was allowed to do business at all, it would no doubt be held a condition and not a tax;* so perhaps if the license were required to be renewed at stated periods; . . . So the two classes of cases, one of which is plainly taxation, and the other a sum paid for a permit, may be approximated until it is difficult or impossible to say to which class a given case may belong. These difficulties to discriminate the principles underlying different cases constantly included in different classes, and to which the same rule of decision cannot be applied, constitute the perpetual debating grounds of the law, and occasion much of the confusion in the decisions. But as was remarked by Judge Marshall, because we cannot easily draw the line does not prove that there is no difference in principle. No one fails to note the contrast between the light of day and the darkness of night, but no one is able to draw the line between daylight and darkness, or to note the precise instant when one ends and the other begins." (*San Francisco* v. *Liverpool etc. Ins. Co.*, 74 Cal. 120, 121, [5 Am. St. Rep. 425, 15 Pac. 380, 382].) It was held the particular exaction was a tax and not a provision for payment as a condition for doing business. The decision was based on an examination of all the circumstances, concluding that the enactment purported to be a revenue measure. In the present case upon a similar examination the conclusion is reached that section 70 of the ordinance does not provide for a tax, but seeks to establish a condition for carrying on a business which has been adjudged to be lawful. Considered as a police regulation, the enactment was beyond the power of the supervisors. [3] As a tax measure it

is based on no reasonable distinction; it is unfair and oppressive, if not in fact prohibitory. The theatre tickets being within the definition of goods, under the charter the board of supervisors, though vested with power to license ticket peddlers, is without power to exact such a tax on those selling such goods at a fixed place of business, and it cannot enlarge its powers by designating men as peddlers who are not such in fact. The section under consideration is invalid.

The petitioner is discharged.

Langdon, P. J., and Nourse, J., concurred.