## STATE v. BAYER et al.

No. 1942. Decided August 14, 1908 (97 Pac. 129).

1. COMMERCE—INTERFERENCE WITH INTERSTATE COMMERCE—PEDDLERS' LICENSES. In so far as Comp. Laws 1907, sections 1710x, 1710x1, make it unlawful, without first obtaining a license, to peddle or hawk enumerated goods, or to engage in or conduct as an itinerant vender, peddler, hawker, or traveling merchant, the business of peddling, selling, or bartering any such goods, regardless of the residence of the persons or the source of the goods, they do not discriminate against persons or property of other states, and so do not affect or interfere with interstate commerce.

2. SAME. The portion of Comp. Laws 1907, sections 1710x, 1710x1, which requires a license to canvass or sell by sample enumerated goods after being shipped into the State, and which permits, without license, the canvassing or selling in such manner goods not shipped into the state, though such selling without a

34 Utah—17

license is prohibited only in case of sale to users and consumers, violates the commerce clause of the federal Constitution; the mere fact that the goods have been shipped into the state being not alone conclusive that they have lost their character as articles of interstate commerce.

3. HAWKERS AND PEDDLERS—REGULATION—POLICE POWER. Comp. Laws 1907, sections 1710x, 1710x1, singling out a few articles, goods not produced or manufactured in the state, and which are not even injurious to health or morals, and requiring an annual license tax of $500 to be paid to peddle any of them, while the business of peddling all other goods, including those which are injurious to health and morals, may be carried on without license, cannot be sustained as a police measure.

4. SAME—REVENUE MEASURE. Because of the illegal discrimination as to property and persons, Comp. Laws 1907, sections 1710x, 1710x1, requiring an annual license tax of $500 to peddle certain articles produced out of the state, while the business of peddling all other articles is not subject to license, cannot be upheld as a revenue measure.

5. CONSTITUTIONAL LAW—PRIVILEGES OF CITIZENS—LICENSES—EQUAL PROTECTION OF LAWS. Comp. Laws 1907, sections 1710x, 1710x1, requiring an annual license fee of $500 for canvassing and selling by sample certain articles produced out of the state, not injurious to health or morals, while no fee is required in the case of other articles are repugnant to the provisions of the federal Constitution that no state shall abridge the privileges or immunities of citizens of the United States, nor deny to persons within its jurisdiction the equal protection of the laws.

6. HAWKERS AND PEDDLERS—WHO ARE SUCH. A hawker or peddler is an itinerant or traveling trader who carries goods about in order to sell them, and who actually sells them to purchasers by delivering the goods at the time of the sale, in contradistinction to the trader who has goods to sell and sells them in a fixed place of business.

APPEAL from District Court, Second District; J. A. Howell, Judge.

Action by the state against J. E. Bayer and others. Judgment for plaintiff. Defendants appeal.

REVERSED AND REMANDED WITH DIRECTIONS.

*Van Cott, Allison & Riter, J. R. Haas,* and *A. C. Lyon* for appellants.

*M. A. Breeden,* Attorney-General, for the State.

### APPELLANT'S POINTS.

Any state statute which prohibits by its express terms or by its necessary operation the taking of orders by non-residents for lawful subjects of commerce in other States or which imposes a license tax upon drummers or agents selling goods by sample or otherwise or soliciting trade or taking orders therefor is a regulation of commerce and is unconstitutional and invalid.     (*Robbins v. Shelby Taxing District,* 120 U. S. 489; *Leloup v. Port of Mobile,* 127 U. S. 640; *Asher v. Texas,* 128 U. S. 129; *Corson v. Maryland,* 120 U. S. 502; *Brennan v. Titusville,* 153 U. S. 289; *Stoutenburgh v. Hennick,* 129 U. S. 141; *Caldwell v. North Carolina,* 187 U. S. 622; *Railway v. Sims,* 191 U. S. 441; *In re White,* 43 Fed. 913, 11 L. R. A. 184; *In re Spain,* 47 Fed. 208; *Ex parte Loeb,* 72 Fed. 657; *In re Bergen,* 115 Fed. 339; *Kessler v. Perilloux,* 127 Fed. 1011; *Shoe Co. v. Rubber Co.,* 156 Fed. 1; *Ex parte Massey* [Texas], 92 S. W. 1086; *Clements v. Casper,* 4 Wyo. 494, 35 Pac. 472; *State v. O'Connor,* 5 N. D. 629, 67 N. W. 824; *Ex parte Rosenblatt,* 19 Nev. 439, 14 Pac. 298; *Ft. Scott v. Pelton,* 39 Kan. 764, 18 Pac. 954; *Martin v. Rosedale,* 130 Ind. 109, 29 N. E. 410; *Bloomington v. Bourland,* 137 Ill. 534, 27 N. E. 692; *Range Co. v. Johnson,* 84 Ga. 754, 11 S. E. 233; *Ex parte Murray,* 93 Ala. 78, 8 So. 868; *Ward v. Maryland,* 79 U. S. (12 Wall.) 418; *Welton v. Missouri,* 91 U. S. 275; *Guy v. Baltimore,* 100 U. S. 434; *Webber v. Virginia,* 103 U. S. 344; *In re Watson,* 15 Fed. 511 [Vt. Statute]; *In re Schechter,* 63 Fed. 695 [Minn. Statute]; *Rogers v. McCoy,* 6 Dak. 238, 44 N. W. 990; *Vermont v. Pratt,* 59 Vt. 590, 9 Atl. 556; *Vines v. State,* 67 Ala. 73; *Murphy v. Sipe,* 49 Ohio St. 536, 31 N. E. 884; *Ames v. People,* 25 Colo. 508, 55 Pac. 725; *Brooks v. Mangan,* 86 Mich. 576, 49 N. W. 633; *State v. McGinnis,* 37 Ark. 362;

*Marshalltown v. Blum,* 58 Iowa 184, 12 N. W. 266; *Commonwealth v. Caldwell* [Mass.], 76 N. E. 955; *State v. Furbush,* 72 Md. 493; *Commonwealth v. Myer,* 92 Va. 809, 23 S. E. 915; *Sayre v. Phillips,* 148 Pa. St. 482, 24 Atl. 76; *In re Jarvis,* 66 Kan. 329, 71 Pac. 576; *Fecheimer v. Louisville,* 84 Ky. 306, 2 S. W. 65; *Ex parte Deeds,* 75 Ark. 542, 87 S. W. 1030; *Bacon v. Locke* [Wash.], 83 Pac. 721; *Ex parte Thomas* [Cal.], 12 Pac. 53; *Commonwealth v. Hana* [Mass.], 81 N. E. 149; *Clements v. Casper,* 4 Wyo. 494, 35 Pac. 472.)

Even if this statute were an exercise of the police power and was passed for the most laudable purpose of preventing fraud or promoting the public welfare it would be unconstitutional and invalid because it conflicts with powers which are exclusively granted to Congress.    (*Henderson v. Mayor of N. Y.,* 92 U. S. 259; *Railroad v. Husen,* 95 U. S. 465; *In re Sanders,* 52 Fed. 802; *Collins v. New Hampshire,* 171 U. S. 30; *Ex parte Scott,* 66 Fed. 45; *In re McAlister,* 51 Fed. 282; *In re Ware,* 53 Fed. 783; *Stubbs v. People* [Colo.], 90 Pac. 1114; *In re Worthen,* 58 Fed. 467.)

An occupation which is thus perfectly legal and lawfully conducted cannot be prohibited by a State, nor can conditions be annexed to the issuance of a license therefor which will virtually amount to such prohibition.    A statute which has this effect and operation deprives citizens of their property without due process of law within the meaning of the Fourteenth Amendment to the United States Constitution. (*In re Quong Woo,* 13 Fed. 229; *Laundry License Cases,* 22 Fed. 701; *Philadelphia v. Telegraph Co.,* 40 Fed. 615; *LaJunta v. Heath* [Colo.], 88 Pac. 459; *Walsh v. Denver* [Colo.], 53 Pac. 458, and cases cited; *Yick Wo v. Hopkins,* 118 U. S. 356.)

RESPONDENT'S POINTS.

Section 2 of article 13 of the state Constitution, says: "Nothing in this Constitution shall be construed to prevent the Legislature from providing a stamp tax, or a tax based

on income, occupation, licenses, franchises or mortgages." The tax levied is upon an occupation, under the taxing power of the State. The power to tax involves the power to destroy, and to use the language of Justice Frick in the *Christensen Company Case* it is "plenary and supreme." (*Ogden v. Crossman,* 17 Utah 66; *Salt Lake v. Christensen Co.,* 33 Utah —; *McCray v. U. S.,* 195 U. S. 24, 47 L. Ed. 78, 25 Cyc. 604, 612; *St. Louis v. Sternberg,* 69 Mo. 289.)

STRAUP, J.

This appeal involves the validity and construction of sections 1710x and 1710x1 of title 61, Comp. Laws 1907, which are as follows:

"No person, firm, or corporation, as principal or agent, shall peddle out, hawk, or, after shipment to this state, canvass, by going from house to house or from place to place, and sell or offer for sale, by sample, to users or consumers, clocks, agricultural implements, tools or machinery, stoves or ranges, wagons, buggies, carriages, surreys, or other similar vehicles, washing machines, churns, pictures, enlarged pictures, or picture frames, lightning rods, spectacles, jewelry, sewing machines, books or musical instruments, within this state, without previously obtaining a license therefor, as herein provided.

"No person, firm, or corporation, as principal or agent, shall engage in or conduct, as an itinerant vender, peddler, hawker, or traveling merchant, the business of peddling, selling, or bartering, or after shipment to this state, canvassing or selling by sample, clocks, agricultural implements, tools or machinery, stoves or ranges, wagons, buggies, carriages, surreys, or other similar vehicles, washing machines, or churns, pictures, enlarged pictures, or picture frames, sewing machines, books, lightning rods, spectacles, jewelry, or musical instruments, within this state, without previously obtaining a license therefor, as herein provided."

In the complaint filed against the appellants it is alleged that they, "after shipment into the State of Utah of certain buggies and carriages, did then and there unlawfully and willfully engage in and conduct, as itinerant venders, peddlers, hawkers, and traveling merchants, the business of peddling, selling, bartering, canvassing, and selling the same, by sample, without previously obtaining a license therefor."

The cause was submitted to the court on an agreed statement of facts, which, in substance, is: That the Spaulding Manufacturing Company, a copartnership, is engaged in the business of manufacturing wagons and carriages at Grinnell, in the State of Iowa. That all the members of the copartnership are citizens and residents of that State. The appellants Bayer and Bacon are residents and citizens of Iowa, and appellants Stayner and Eckhart are citizens and residents of Utah. That the appellants were employed by the Spaulding Manufacturing Company as salesmen. "That said defendants, while so employed as salesmen by said company and in the discharge of their duty, after shipment into this State of a car load of carriages and buggies, engaged in the pursuit or business of canvassing and selling by sample and otherwise certain buggies or carriages to people residing in the county of Davis and State of Utah. That said defendants canvassed the towns of Farmington and Centerville, in said county, with samples, and exhibited on or about November 15, 1907, samples of buggies and carriages to Charles O. Rollings, and sold to him a certain carriage, and agreed to deliver a carriage similar in all respects to the sample thus exhibited to the said purchaser within thirty days thereafter, and thereafter, within such stipulated time, did deliver a carriage similar to the sample aforesaid, and during the times mentioned in said complaint the procedure aforesaid was repeated. That said defendants during the times mentioned in said complaint, and in said Davis county, trailed vehicles through said Davis county, in some instances selling and thereupon delivering such trailed vehicles, and in some instances said trailed vehicles were sold and there was taken in exchange other vehicles, which were trailed for a distance and then again sold, all of the aforesaid matters occurring in said Davis county and during the times mentioned in said complaint. That said vehicles so sold to the said purchasers were manufactured by said company at its factory in Grinnell, State of Iowa, with the exceptions aforesaid, and the vehicles so sold and delivered belonged to and were the property of said com-

pany, and were sold for and on its behalf, and the said vehicles so manufactured in Grinnell, Iowa, were sent from there to Davis county, Utah, for the purpose of being sold, and for no other purpose. That such vehicles were not out of the possession of said company or its agents from the time of their receipt within the State of Utah until the same were sold and delivered as aforesaid.'' Upon such facts the defendants were found guilty and adjudged to pay a fine.

On appeal they urge that the enactment contravenes section 1, art. 8, Const. U. S., relating to the power of Congress to regulate commerce among the several States, section 2, art. 4, providing that the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States, and section 1 of the fourteenth amendment providing that no State shall make or enforce any law which abridges the privileges or immunities of citizens of the United States, nor deny to any person within its jurisdiction the equal protection of the laws, and section 24, art. 1 of the State Constitution which provides that all laws of a general nature shall be uniform in operation. It is, of course, conceded that if the statute gives a preference to property manufactured or produced within the State or makes a discrimination against nonresidents or against property manufactured or produced without the State, or otherwise interferes with interstate commerce, it is unconstitutional. It is well established that a tax upon the seller of goods is a tax upon the goods themselves. It is also well settled that State laws laying occupation, business, and privilege taxes contravene the federal Constitution in so far as they impose a tax on persons engaged in taking orders for goods by sample or otherwise to be filled from stocks not within the State at the time the sales are made. It is equally well settled that, where the goods are shipped into the State and stored in advance of the sales and the orders taken are filled therefrom, the business is not interstate, but local commerce, and therefore the business of agents soliciting orders for such goods is not protected by the provisions of the federal Con-

stitution where the agents are in possession of the goods at the time the sales are made, and not only solicit the orders, but complete the sales by delivering at one and the same time. In notes to the case of *In re Kinyon,* reported in 2 A. & E. Ann. Cases, pages 701-703, may be found a citation and collection of nearly all the cases bearing upon the question. To what extent these statements need modification or are applicable, when the goods, offered for sale in such manner, are in original packages in which they were imported, need not now be considered.

The act in question makes it unlawful, without first obtaining a license, to peddle or hawk the goods enumerated in the statute, or to engage in or conduct as an itinerant vender, peddler, hawker, or traveling merchant the business of peddling, selling, or bartering any such goods. This part of the act applies to all persons, regardless of their residence and to all of the enumerated articles, whether manufactured or produced within or without the State. To this extent the act does not appear to make any discrimination adversely to persons or property of other States, and does not, for that reason, affect or interfere with interstate commerce. The act further provides that, after shipment to this State, it shall be unlawful, without first obtaining a license, to canvass by going from house to house or from place to place, and sell or offer for sale by sample to users or consumers any of the enumerated articles, or to engage in or conduct, after shipment to this State, the business of canvassing or selling by sample any such goods. That is to say, after any of the enumerated articles are shipped into the State, it shall not be lawful, without first obtaining a license, to canvass or sell by sample any of them, though they have not yet been mingled with nor become a part of the common mass of property within the State, nor otherwise lost their character as articles of interstate commerce. The mere fact that they may have been shipped into the State is not alone conclusive that they have lost such character, for, as said by Mr. Justice Field, in the case of *Welton v. Missouri,* 91 U. S. 275, 23 L. Ed. 347:

"The commercial power continues until the commodity has ceased to be the subject of discriminating legislation by reason of its foreign character. That power protects it even after it has entered the state from any burdens imposed by reason of its foreign origin."

The effect of the legislation is to forbid, without license, the canvassing or selling by sample any of the goods specified in the statute and which have been shipped into this State, and permits, without license, canvassing and selling in such manner the same kind of goods manufactured or produced within the State.

"A law," says Mr. Justice Swayne, in the case of *Machine Co. v. Gage*, 100 U. S. 678, 25 L. Ed. 754, "which requires a license to be taken out by peddlers to sell articles not produced in the state, and requires no such license with respect to those who sell in the same way articles which are produced in the state, is in conflict with the power of Congress to regulate commerce with foreign nations and among the several states."

That portion of the act which requires a license to canvass or sell by sample goods shipped into the state, and permits, without a license, the canvassing or selling in such manner goods not shipped into the state, violates the commerce clause of the federal Constitution, and is therefore void. Such a conclusion was also reached by the Supreme Court of Washington in the case of *Bacon v. Locke*, 42 Wash. 215, 83 Pac. 721, upon a similar statute.

This portion of the statute is further an illegal regulation of commerce, in that it imposes a tax to canvass and sell to users and consumers by sample goods shipped into the state, and permits sales in such manner to merchants and all persons not users and consumers without a license. In this connection it is again well said by the Supreme Court of the United States in the case of *Brennan v. Titusville*, 153 U. S. 289, 14 Sup. Ct. 829, 38 L. Ed. 719.

"It is true, in the present case, the tax is imposed only for selling to persons other than manufacturers and licensed merchants, but, if the state can tax for the privilege of selling to one class, it can for selling to another, or to all. In either case it is a restric-

tion on the right to sell, and a burden on lawful commerce between the citizens of two states. It is as much a burden upon commerce to tax for the privilege of selling to a minister as it is for that of selling to a merchant."

We do not see wherein other portions of the statute contravene the commerce clause of the federal Constitution. The state has the undoubted right to classify occupations, and to impose different taxes upon different occupations, so long as there is no discrimination against citizens or property of other states. It is essential, however, to the constitutionality of such statutes that the tax apply equally to all persons of a given class and is uniform and equal. The right of the state to enact laws to regulate or restrict the sale of articles deemed injurious to health or morals of the community is also unquestioned. Avocations and employments pursued within the state, not directly connected with interstate commerce, or with some other employment or business exercised under authority of the Constitution and laws of the United States, and all property within the state mingled with and forming a part of the great mass of property therein, are subject to the taxing and police power of the state. The Legislature undoubtedly has the power to regulate the business of peddling and hawking within its territory. The ordinary meaning of a peddler or hawker is an itinerant or traveling trader who carries goods about in order to sell them, and who actually sells them to purchasers by delivering the goods at the time of the sale, in contradistinction to the trader who has goods to sell and sells them in a fixed place of business. Such sales and business are wholly an internal commerce, which the state has a right to regulate. It may well be conceded that frauds and cheats are likely to attend itinerant and irresponsible peddling from 'house to house or place to place, and that, under its police power, the state may regulate such business by requiring peddlers and hawkers to take out and pay for licenses. If the Legislature had regulated the business of peddling and hawking, and had forbidden the carrying on of such business without first obtaining a license, we think no fault could be found with such an enactment.

But this is not what the Legislature did. It singled out but a few articles—such goods as are not produced or manufactured in this state and which are not even injurious to health or morals of the community—and required an annual fee or tax of $500 to be paid to peddle any of them, while the business of peddling and hawking of all other goods and articles, including those which are injurious to health and morals, and which affect the security of the lives, limbs, and comfort of the people, may be carried on with perfect freedom and without license. That is to say, under the act one may peddle shotguns and bowie knives, dynamite, and gunpowder, celery compound and cocaine, tobacco and opium, and many other things (whether harmful or harmless) without license and with impunity; but to peddle the Holy Bible or any other book, wagons, buggies, stoves, sewing machines, and a few other articles enumerated in the statute an annual fee or tax of $500 is exacted. Now, it is apparent that, under the pretense of exercising a police power or of adopting a revenue measure, the Legislature passed the act for the mere benefit of local and domestic dealers. Of a similar act passed by the Legislature of the state of Washington the federal court in the case of *Spaulding v. Evenson* (C. C.), 149 Fed. 913, said:

"In 1903 an act was passed by the Legislature of this state which undertook to prohibit the sale of vehicles, stoves, ranges, pianos, or other merchandise without license, and the license fee was fixed at $10 per day, but with the proviso that the act should not apply to any person selling any of said articles from his regularly maintained stock or established place of business, when such stock had been maintained in the county for a period of six months. This act was several times held discriminative and void by superior judges of the state of well-recognized ability, but did not apparently reach the Supreme Court; those decisions being generally acquiesced in. While it has been suggested by affidavit that complainants are carrying on business in violation of this law, it was not referred to in argument, and it may be assumed that counsel do not rely upon that point. In 1905 an act was passed to meet the objections to that of 1903. It provides that every person, firm, or corporation who peddles out after shipment to the state, canvasses, or sells by sample, etc., shall pay in advance an annual license tax of $200. This act was recently declared void by the state Supreme Court.

It is a matter of common notoriety that this legislation was enacted at the suggestion and for the benefit of local dealers. The amount fixed for license by the Legislature was intended to be prohibitive of competition by peddlers. Shortly after the decision holding the act of 1905 unconstitutional, we find the dealers who had attempted to put the peddlers out of business by legislation resorting to the very ingenious scheme which has been here disclosed. It is proposed now to accomplish by subterfuge that which the courts of the state have repeatedly held cannot be done directly."

In the case of *Robbins v. Shelby*, 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694, it was also said:

"This kind of taxation is usually imposed at the instance and solicitation of domestic dealers as a means of protecting them from foreign competition. And in many cases there may be some reason in their desire for such protection. But this shows in a still stronger light the unconstitutionality of the tax."

While ordinarily we are not permitted to inquire into the motive of the Legislature, yet as said by the court in the case of *Lochner v. New York*, 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937:

"It is impossible for us to shut our eyes to the fact that many of the laws of this character, while passed under what is claimed to be the police power for the purpose of protecting the public health or welfare, are in reality passed from other motives. We are justified in saying so when, from the character of the law and the subject upon which it legislates, it is' apparent that the public health or welfare bears but the most remote relation to the law. The purpose of a statute must be determined from the natural and legal effect of the language employed; and whether it is or is not repugnant to the Constitution of the United States must be determined from the natural effect of such statutes when put into operation, and not from their proclaimed purpose. (*Minnesota v. Barber*, 136 U. S. 313, 10 Sup. Ct. 862, 34 L. Ed. 455; *Brimmer v. Rebman*, 138 U. S. 78, 11 Sup. Ct. 213, 35 L. Ed. 862.) The court looks beyond the mere letter of the law in such cases. (*Yick Wo v. Hopkins*, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220.)"

We are well satisfied that the act has no such relation to the public health or morals as will sustain it as a police measure. Nor can it, because of its illegal discrimination as to

property and persons, be upheld as a revenue measure. We think it repugnant to the provisions of the federal Constitution that no state shall abridge the privileges or immunities of citizens of the United States nor deny to persons within its jurisdiction the equal protection of the laws. Whether it is also in conflict with the provisions of the state Constitution requiring all laws of a general nature to be uniform in operation we need not now determine. The judgment of the court below is therefore reversed, and the cause remanded, with directions to dismiss the action and to discharge the defendants.

McCARTY, C. J., and FRICK, J., concur.