[Crim. No. 1661.   First Appellate District, Division Two.—August 18, 1932.]

In the Matter of the Application of H. J. BOCK for Writ of Habeas Corpus.

Pillsbury, Madison & Sutro, Frank D. Madison and Marshall J. Madison for Petitioner.

George A. Clough and John Curry, as *Amici Curiae*, in Support of Petitioners.

Henry E. Greer, District Attorney, and Edson Abel for Respondents.

SPENCE, J.—Petitioner was arrested upon a charge of violating a county ordinance passed by the supervisors of the county of Marin and known as Ordinance No. 206. He seeks his release upon *habeas corpus*.

The ordinance was passed on March 15, 1932, and took effect thirty days thereafter. In its entirety it reads as follows:

"Ordinance No. 206.

"An ordinance defining the terms 'Substitute for Butter', and requiring persons, firms and corporations manufacturing, buying, selling, dealing in or furnishing or having in possession for any purpose other than consumption in his own family a substitute for butter to obtain a license authorizing them to do so and to pay a license fee; and providing penalties for the violation of this ordinance.

"The Board of Supervisors of the County of Marin, State of California, do ordain as follows:

"Section 1. It shall be unlawful for any person, firm or corporation, whether as principal, clerk, servant, agent or employee, outside of the limits of any incorporated city of the County of Marin, to manufacture, buy, sell, deal in, or furnish to his, its or their patrons, or to have in posses- sion for any purpose whatsoever other than for consumption in his own family, or for transportation in case of a common carrier, any oleomargarine or other substitute for butter without first having procured a license so to do as in this ordinance provided.

"Section 2. For the purposes of this ordinance, a substi- tute for butter is defined as any article, product or compound made wholly or partly out of any fat, oil or oleaginous sub- stance or compound thereof, not produced directly and wholly (except for the addition of small quantities of salt and coloring matter) and at the time of manufacture from unadulterated milk or cream from the same, and the moisture content of which exceeds 2% by weight of finished product.

"Section 3. Such licenses shall be issued by the Tax Collector of the County of Marin, State of California, upon the payment to him of a license fee of two hundred dollars ($200.00) per year, payable in advance. All money received in payment of such license fees shall be paid into the General Fund of the County of Marin by the Tax Col- lector.

"Section 4. No license issued under this ordinance shall be assignable or transferable, nor shall it authorize any person, firm, or corporation other than the one named in the license to do business, nor shall it authorize the business therein named to be transacted at any place other than is therein mentioned or named without permission of the Tax Collector endorsed on said license; provided, that licensees having more than one place of business shall obtain a license for each of said places of business. Every license issued under this ordinance shall bear on its face in black-faced type at least twice as large as any other type appearing on its face the words 'Dealer in Butter Substitutes'.

"Section 5. Every person, firm or corporation having a license as herein provided for shall keep said license contin- uously and conspicuously on display in that part of his or its

place of business frequented by those buying butter substitute from him or it. Every person, firm or corporation having a license as herein provided for shall also keep the state license to deal in substitutes for butter or cheese continuously and conspicuously on display in that part of his or its place of business frequented by those buying from him or it. The posting or possession of said state license shall be *prima facie* evidence of a violation of this ordinance unless the possessor thereof shall have procured a license as in this ordinance provided.

"Section 6. Each separate act in violation of any provision of this ordinance shall constitute a separate offense and every person, firm or corporation violating any of the provisions of this ordinance shall be guilty of a misdemeanor and shall be punished by a fine not exceeding five hundred dollars ($500.00), or by imprisonment in the County Jail of the County of Marin for not exceeding six months, or by both fine and imprisonment.

"Section 7. This ordinance is hereby declared to be enacted in the exercise of the police power of the County of Marin, State of California, and for the purpose of preventing fraud in the sale of substitutes for butter. If any section, sentence, clause or phrase of this ordinance shall be declared invalid, such decision shall not affect the validity of the remaining portions of this ordinance. The Board of Supervisors hereby declares that it would have passed this ordinance and each section, sentence, clause and phrase thereof irrespective of the fact that any one or more sections, sentences, clauses or phrases is declared unconstitutional or otherwise invalid.

"Section 8. This ordinance shall take effect thirty (30) days after its passage, and before the expiration of fifteen (15) days from the passage hereof, it shall be published for at least one week in the San Rafael Independent, a newspaper published in the County of Marin."

Petitioner was engaged in the business of selling oleomargarine and had some of the product in his possession for the purpose of sale. He failed to obtain the license referred to in the ordinance and his arrest followed.

In this proceeding petitioner contends that the ordinance is invalid, urging constitutional and other grounds in support of his contention. Most of the legal principles relied upon

by petitioner are not disputed by respondent, but the latter contends that these principles have no application here.

■ It is conceded that the ordinance must stand or fall as a regulatory measure for a county can impose a license tax for the purpose of regulation only and cannot impose such tax for the purpose of revenue. (Pol. Code, sec. 3366; *County of Plumas* v. *Wheeler*, 149 Cal. 758 [87 Pac. 909].),

■ It is further conceded that an ordinance purporting to prohibit the manufacture or sale of oleomargarine would be unconstitutional (*Jelke Co.* v. *Emery*, 193 Wis. 311 [53 A. L. R. 463, 214 N. W. 369]; *People* v. *Marx*, 99 N. Y. 377 [52 Am. Rep. 34, 2 N. E. 29]; see, also, *Weaver* v. *Palmer Bros. Co.*, 270 U. S. 402 [70 L. Ed. 654, 46 Sup. Ct. Rep. 320]), and that any ordinance indirectly accomplishing that result by means of imposing a tax in such amount as to be prohibitory would likewise be unconstitutional. (*In re Dees*, 50 Cal. App. 11 [194 Pac. 717]; *Merced County* v. *Fleming*, 111 Cal. 46 [43 Pac. 392].)

The foregoing principles have been enunciated in *County of Plumas* v. *Wheeler, supra*. At page 762 the court there said: "The principles affecting the right of legislative bodies in the exercise of what is known as the 'police power', to place restrictions upon the conduct of lawful pursuits and occupations, are well settled, although there is often great difficulty in applying these principles to a given state of facts. It is within the legislative discretion to place such restrictions upon the use of any property, or the conduct of any business as may be reasonably necessary for the public safety, comfort, or health. . . . The manner and extent of such regulation are primarily legislative questions, and the courts will not interfere unless it clearly appears that the legislature has, under the guise of regulation, imposed an arbitrary or unreasonable burden upon the use of property or the pursuit of an occupation. But the legislative determination is not conclusive. As this court said in *In re Smith*, 143 Cal. 368 [77 Pac. 180] : 'The law will not allow the rights of property or business to be invaded under the guise of police regulation for the benefit of the public health or good order, when it is manifest that such is not the object or purpose of the enactment or by-law.' 'The question in each case,' says the Supreme Court of the United States, 'is whether the legislature has adopted the

statute in exercise of a reasonable discretion, or whether its action be a mere excuse for an unjust discrimination, or the oppression or spoliation of a particular class'. (*Holden v. Hardy*, 169 U. S. 366 [42 L. Ed. 780, 18 Sup. Ct. Rep. 383].)''

In *In re Dees, supra*, the court said at page 16: ''Even though the power to license for revenue be upheld, it is not a power to prohibit. The question as to whether or not the ordinance is so unreasonable in character as to transcend the proper exercise of the law-making power is one to be determined by the court.''

Again, in *Merced County v. Fleming, supra*, the court said at page 50: ''It is perfectly true that the power to license and regulate for the purposes of revenue is not the power to prohibit, and that an attempt to accomplish the latter object under a pretense of regulation cannot be upheld.''

In the early case of *Ex parte Frank*, 52 Cal. 606 [28 Am. Rep. 642], the court expressed the general rule as follows: ''An ordinance passed under a general authority of this nature must be, first, 'reasonable, consonant with the general powers and purposes of the corporation, and not inconsistent with the laws or policy of the state'; second, it must not be oppressive; third, it must be impartial, fair, and general; fourth, it may regulate but must not restrain trade. (Dillon on Municipal Corporations, secs. 253 to 257, inclusive, and authorities there cited.)''

The rule as stated in Ruling Case Law, volume 26, page 238, is as follows: ''In most of the states, however, it is regarded as the law that an excise upon the performance of an act which the legislature could not constitutionally prohibit must be reasonable in amount, and must not amount to the suppression of any useful or legitimate occupation or the deprivation of any natural and inalienable right. It is generally recognized that among the inalienable and inherent rights guaranteed by our constitution to every law abiding citizen is the right to live and enjoy life, and the right to acquire property; and that these rights necessarily carry with them the right to gain a livelihood and acquire property by following any useful or legitimate occupation, the pursuit of which is not injurious to the public weal. If you deprive a man of the means of livelihood, you necessarily deprive him of the right to live and enjoy his life.

Great as is the taxing power, it can never rise superior to the inalienable rights guaranteed by the constitution."

█ The ordinance in question upon its face purports to be a regulatory measure expressly declaring that it was enacted "for the purpose of preventing fraud in the sale of substitutes for butter" (sec. 7, *supra*); but the court is not bound by the face of the ordinance and it is within its power to take evidence relating to the purpose and effect of the ordinance in order to determine the validity thereof. (*In re McCoy*, 10 Cal. App. 116 [101 Pac. 419].) It was petitioner's main contention that the ordinance was invalid because the license tax prescribed was prohibitory in amount and upon that issue certain evidence was taken before this court to supplement the stipulations of facts entered into by the parties.

Before discussing the facts developed in the stipulations and testimony we first desire to call attention to section 12½ of the General Dairy Law of the state of California (Stats. 1931, p. 459, General Laws, Act 1945), in effect at the present time as well as at the time of the passage of said ordinance. A reading of the provisions of the state law, not to mention the federal laws and regulations on the subject, shows that a complete scheme for the regulation of the manufacture and sale of oleomargarine had been provided requiring, among other things, the payment of license taxes. Comparing the ordinance with the provisions of the General Dairy Law it is at once apparent that the ordinance added nothing thereto by way of regulation except to provide that every person engaged in the business in the county of Marin should obtain and post another license and pay therefor another license tax in the sum of $200 per annum. In the case of retailers the county tax provided by the ordinance is forty times as large as the $5 tax imposed by the state law.

Coming to a consideration of the evidence before us, it appears that at the time the ordinance was enacted there were approximately ten persons, firms or corporations engaged in the sale of oleomargarine in the county of Marin outside the limits of incorporated cities to whom said ordinances would apply; that said number included both wholesalers, distributing to the retail dealers from trucks, and the retail dealers; that there were but four retail dealers

in the county outside of the limits of incorporated cities who sold oleomargarine to the general public; that during the twelve months' period before the ordinance took effect three of said four retail dealers sold less than 1,000 pounds each of oleomargarine and the fourth sold approximately 1200 pounds; that the profit to said retail dealers on said sales was approximately three and one-half cents per pound, varying from two cents to four cents per pound; that certain distributors had no established places of business in Marin County, but sold from trucks in which they visited the retailers and solicited sales; that the entire sales of oleomargarine of one of the larger distributors in the county of Marin in 1931, including sales to retailers within incorporated cities and towns, was 15,600 pounds; that the distributor's profit upon said sales varied from two to three cents per pound; that since the passage of said ordinance no licenses required thereby have been applied for or issued; that no expense has been incurred by the county by reason of said ordinance except the nominal cost of printing and publishing the same; that none of the county officers has expended or planned to expend any money or to incur any additional expense on behalf of the county by reason of the adoption of said ordinance. It further appears that oleomargarine is a wholesome product having a definite food value; that it is a product of vegetable oils emulsified in ripened skim-milk to which salt is added; that animal fats are sometimes used, but not in the product manufactured in this state; that oleomargarine is used as a substitute for butter and sold as a competitor thereof, selling for approximately one-half the price; that butter and oleomargarine have been selling side by side over a period of time with no appreciable change in the ratio of price and that the sale of butter in the county of Marin and throughout the state of California exceeds the sale of oleomargarine.

With the foregoing facts before us we have no hesitancy in declaring that in our opinion the ordinance in question is invalid. Its title discloses its sole and only purpose, to wit, to require a license and the payment of a license tax. The only semblance of a regulatory provision is the one requiring that the county license as well as the state license be conspicuously displayed. In view of the provisions of section 12½ of the General Dairy Law we cannot but con-

clude that this purported added regulation was but a pretense inserted in an attempt to justify the imposition of a tax. It was in effect no regulation at all and the prospective cost of enforcing this purported regulation would be negligible. The $200 tax imposed upon every retailer irrespective of the amount of sales is clearly excessive and prohibitory. It cannot be justified upon the theory that it bears any relation to the cost of enforcement of the purported regulation and its effect is to entirely suppress the sale of oleomargarine in the unincorporated territory within the county. The conclusion is inescapable that the tax was imposed either for the purpose of revenue or for the purpose of indirectly prohibiting the sale of oleomargarine. Whatever may have been its purpose its effect is obvious and the ordinance must fall under the authorities above cited.

In view of the conclusions which we have reached we deem it unnecessary to discuss petitioner's further contention that the ordinance is inconsistent with section 12½ of the General Dairy Law and therefore unconstitutional under section 11 of article XI of the Constitution.

It is ordered that the petitioner be discharged.

Nourse, P. J., and Sturtevant, J., concurred.