6 Cal.App.2d Supp. 763 (1935)
THE PEOPLE, Respondent,
v.
J. P. SACKETT et al., Appellants.
California Court of Appeals. 
April 13, 1935.
 C. P. Von Herzen for Appellants.
 Ray L. Chesebro, City Attorney, Newton J. Kendall, Assistant City Attorney, and W. Jos. McFarland and Albert E. Forster, Deputies City Attorney, for Respondent.
 Schauer, J., pro tem.
 Defendants severally appeal from judgments of conviction of violation of section 2 of Ordinance No. 71,485 of the city of Los Angeles, contending, among other things, that such ordinance is violative of constitutional [6 Cal.App.2d Supp. 765] limitations and beyond the power of a municipality to make or enforce.
 [1] Such ordinance declares it to "be unlawful for any owner to operate or cause to be operated, any interurban stage without first having obtained (from the Board of Public Utilities and Transportation of the City of Los Angeles) a permit in writing ... so to do". The term "interurban stage" is so defined as to include motor carriers of either persons or property who use the streets of Los Angeles in carrying on a public transportation business between points one or more of which are within, and one or more without, the limits of said city. Before a permit is issued it requires that the owner file with the board, and thereafter keep in full force and effect, "a bond or policy of insurance in such form as said board may deem proper ... insuring the public against loss by reason of damage that may result to any person or property from the operation of" his interurban vehicles and a further bond in the sum of $2,500 "payable to the Board ... for the use and benefit of any interested person ...", conditioned upon the prompt payment to the shipper of collections made on C. O. D. shipments.
 We think that such matters so attempted to be regulated by the ordinance are not local or municipal. The regulations imposed are not upon the use of the city streets as is contended, but upon the conduct of a business irrespective of the use of streets, except as such use is incidental to entry into or departure from the city in the carrying on of the business sought to be regulated; the bonds required are not limited for the protection of pedestrians, property owners, or shippers within, or shipments or collections originating or terminating within the corporate limits of the city of Los Angeles. The bonds so required would apply alike to business of the carrier throughout the state or elsewhere. "While the use of the streets may be regulated the city has no power to convert them into toll roads and thus exact tribute from those who in the conduct of business elsewhere have occasion to use them solely as highways." (In re Smith, 33 Cal.App. 161, 164 [164 P. 618].)
 [2] The provision in section 23, article XII, of the Constitution for the reservation in municipal councils, until a vote to the contrary by the electors, of "such powers of [6 Cal.App.2d Supp. 766] control over public utilities as relate to the making and enforcement of local, police, sanitary and other regulations, other than the fixing of rates, vested in any city ... as, at an election to be held pursuant to law, a majority of the qualified electors of such city ..., voting thereon, shall vote to retain" is obviously not creative in the governing boards of municipalities of powers any greater than those theretofore possessed by them relative to the control of public utilities. Said section 23 provides generally that: "The railroad commission shall have and exercise such power and jurisdiction to supervise and regulate public utilities, in the state of California, ... as shall be conferred upon it by the legislature, and the right of the legislature to confer powers upon the railroad commission respecting public utilities is hereby declared to be plenary and to be unlimited by any provision of this Constitution. From and after the passage by the legislature of laws conferring powers upon the railroad commission respecting public utilities, all powers respecting such public utilities vested in ... municipal councils, or other governing bodies of the several ... cities ... shall cease so far as such powers shall conflict with the powers so conferred upon the railroad commission; provided, however, that this section shall not affect" the reservation hereinabove noted, to-wit, "powers of control" of a "local" nature which were then and had been theretofore "vested in any city and county or incorporated city or town".
 [3] By the enactment of the so-called Auto Stage and Truck Transportation Act (Stats. 1917, p. 330; Deering's Gen. Laws, 1931, vol. 2, p. 2534) the railroad commission was expressly "vested with power and authority to supervise and regulate every transportation company in this state; ... to regulate the accounts, service and safety of operations of each such transportation company; ... and to supervise and regulate transportation companies in all other matters affecting the relationship between such companies and the traveling and shipping public". (Sec. 4, above cited act.) The term "transportation company" as used therein is defined to include public carriers of property by auto truck over regular routes not exclusively within a single city. The defendants come within this definition. It may be remarked, however, that our conclusions would be [6 Cal.App.2d Supp. 767] the same if the defendants were a public carrier of passengers as by section 2 1/4 of the Public Utilities Act (Act 6386, Deering's Gen. Laws, 1931, vol. 2, p. 3523) public carriers of passengers, for compensation, over regular routes, are declared to be common carriers and by subdivision dd, section 2, every common carrier is included within the definition of "public utility" and hence made subject to the powers of the commission as stated generally throughout that act and with particularity as to "passenger stage corporations" in section 50 1/4 thereof.
 Thus it appears that the legislature has acted pursuant to the right given it by said section 23 of article XII of the Constitution, and has conferred upon the railroad commission full jurisdiction over common carriers of passengers and property. The city of Los Angeles, therefore, had no right to pass, and has no power to enforce, the ordinance in question, unless the "regulation" thereof be "local" and the power thereunto be "vested". As heretofore suggested, we think that the subject of the legislation in this case was not local and that the city never possessed the power of statewide regulation of a transportation business whose use of the streets of the city of Los Angeles, like those of every municipality through which its vehicles passed, was merely incidental to the carrying on of a business which by definition of the ordinance itself is exclusively nonlocal.
 [4] It might also be mentioned that even if this ordinance could be otherwise sustained it apparently would have to fall as obnoxious to the provisions of section 21, article I of the Constitution. Its regulatory provisions are made applicable only to those transportation companies "which operate between points, stations or depots, one or more of which are within and one or more of which are without said city; and which do not, on the same continuous run, receive and discharge passengers or freight within said city". For the type of regulation attempted by this ordinance we see no reasonable ground for such discrimination. The ordinance, therefore, is void for reasons similar to those expressed in In re Blois, 179 Cal. 291 [176 P. 449].
 The judgments are reversed and the causes united in this appeal are remanded to the municipal court, which is directed to dismiss the actions.
 Shaw, P. J., and Fox, J., concurred.