PATROSSO, J.
Defendant was convicted of violating section 710 of Ordinance 5860 of the county of Los Angeles, in that he operated a “tank vehicle” within the county without having procured a license therefor as provided in said section. The sole question presented is whether the ordinance is constitutional as applied to the defendant and the business conducted by him. We have concluded that the question must be answered in the negative and accordingly are reversing the judgment.
The facts are undisputed. At the times charged in the *Supp. 893 complaint and for several years prior thereto, defendant was and had been engaged in the business of operating tank trucks and other tank vehicles as a highway common carrier and as a petroleum irregular route carrier under certificates of public convenience and necessity issued by the Public Utilities Commission of the State of California, and it was for operating a vehicle in the pursuit of such business that he was convicted because he had not procured the license required by section 710 of the ordinance previously mentioned.
Section 710 reads as follows: “710. Gasoline and oil tank trucks. Every person engaged in the business of running a tank vehicle and every person who, in connection with or as part of, any business in which he is engaged, runs such a vehicle shall procure a license and pay a license fee of fourteen dollars per year per vehicle.”
Section 708 of the same ordinance defines a “tank vehicle” as follows: “708. Definition. As used in this article ‘tank vehicle’ means any vehicle which, in the unincorporated territory of the County, either collects and transports, or transports and delivers flammable liquids or liquefied petroleum gases, or both, both as now or hereafter defined in the County Fire Code. A tank truck and tank trailer attached thereto shall be considered as only one vehicle.”
By section 7 it is provided that every person who engages in any business for which a license is required without having procured a license so to do is guilty of a misdemeanor.
Ordinance 5860 is the general licensing ordinance of the county of Los Angeles, and section 83 thereof provides that no license required by the terms thereof shall be issued for “any business, occupation or activity, if such business, occupation or activity has been, will be, or is apt to become any one or more of the following: (a) Prohibited by any local ordinance or by any state law, statute, rule or regulation. (b) A Public nuisance, (c) In any way detrimental to the public interest, (d) Prohibited by Ordinance No. 1494.” In addition, section 84 provides that a license may be denied if the appellant “is a person unfit to be trusted with the privileges granted by such license” or has knowingly made a false statement in a material matter in his application. Section 92 provides for the revocation of a license upon any of the grounds specified as authorizing a denial of such license and other additional grounds therein specified which are not necessary to be set forth in detail except to note that included therein are false advertising *Supp. 894 and “willful failure to comply with the terms of any contract made as a part of the exercise of the occupation or activity licensed.”
It is conceded by both parties that the fee required to be paid by persons engaged in any of the occupations or businesses mentioned in the ordinance is for the purpose of regulation, not revenue, and each likewise concedes that, except as to certain occupations not here material, a county may not license for the purpose of revenue [Bus. & Prof. Code, §§16100, 16101; In re Bock (1932), 125 Cal.App. 375, 379 [13 P.2d 836]].
By the provisions of section 23 of article XII of the California Constitution all public utilities therein enumerated, and every class of corporations, individuals or associations “declared by the legislature to be public utilities” are declared to be “subject to such control and regulation by the railroad commission [now Public Utilities Commission] as may be provided by the legislature.” It is further provided therein that “Prom and after the passage by the legislature of laws conferring powers upon the railroad commission respecting public utilities, all powers respecting such public utilities vested in boards of supervisors or municipal councils, or other governing bodies of the several counties, cities and counties, cities and towns, in this state, or in any commission created by law and existing at the time of the passage of such laws, shall cease so far. as such powers shall conflict with the powers so conferred upon the railroad commission. . . .”
Pursuant to the power thus conferred upon it by this constitutional provision, the Legislature adopted the Public Utilities Code, among the provisions of which we find the following pertinent provisions: Section 213 defines “highway common carrier” as any person or corporation owning or operating any auto truck used in the business of transportation of property as a common carrier for compensation over any public highway in this State between fixed termini or over a regular route and not operating exclusively within the limits of an incorporated city with certain exceptions not here mentioned.
Section 214 defines a “petroleum irregular route carrier” as every person or corporation engaged as a common carrier, other than as a highway common carrier, for compensation.in the ownership, control, operation or management of any motor vehicle transporting petroleum or petroleum *Supp. 895 products in a tank truck or tank trailer over any public highway in the state.
Both highway common carriers and petroleum irregular route carriers are required to secure from the Public Utilities Commission, certificates of public convenience and necessity prior to operating on the public highways of the state (§1063).
Section 1062 reads as follows:
“Regulatory authority of commission. The commission may: “(a) Supervise and regulate every highway common carrier and petroleum irregular route carrier in this State.
“(b) Fix the rates, fares, charges, classifications, and rules of each such carrier.
“(e) Regulate the accounts, service and safety of operations of each such carrier, and require the filing of annual and other reports and of other data by such carriers.
“(d) Supervise and regulate such carriers in all other matters affecting the relationship between them and the shipping public.
“The commission, by general order or otherwise, may prescribe rules applicable to any and all highway common carriers and petroleum irregular route carriers. The commission, in the exercise of the jurisdiction conferred upon it by the Constitution of this State and by this part, may make orders and prescribe rules affecting highway common carriers and petroleum irregular route carriers, notwithstanding the provisions of any ordinance or permit of any city, city and county, or county, and in case of conflict between any such order or rule and any such ordinance or permit, the order or rule of the commission shall prevail. ’ ’
From the foregoing it appears too clear to admit of argument that the regulation of the business in which defendant is engaged has been committed to the Public Utilities Commission to the exclusion of all local authorities. The language of the court in People v. Sackett (1935), 6 Cal.App.2d Supp. 763, 767 [43 P.2d 1115], effectively answers and disposes of all arguments of the People to the contrary: “Thus it appears that the legislature has acted pursuant to the right given it by said section 23 of article XII of the Constitution, and has conferred upon the railroad commission full jurisdiction over common carriers of passengers and property. The. city of Los Angeles, therefore, had no right to pass, and has no power to enforce, the ordinance in question, unless the ‘regulation’ thereof be ‘local’ and the power thereunto be ‘vested.’ *Supp. 896 As heretofore suggested, we think that the subject of the legislation in this ease was not local and that the city never possessed the power of statewide regulation of a transportation business whose use of the streets of the city of Los Angeles, like those of every municipality through which its vehicles passed, was merely incidental to the carrying on of a business which by definition of the ordinance itself is exclusively nonlocal.” [See to the same effect: People v. Willert (1939), 37 Cal.App.2d Supp. 729, 739-741 [93 P.2d 872].]
It need only be added that if defendant could, as the ordinance provides, be denied a license to operate as a common carrier in the county of Los Angeles merely because the board of supervisors determined that such business was ‘ ‘ detrimental to the public interest,” or because in its judgment defendant was “unfit to be trusted with the privilege” of engaging therein, the exclusive jurisdiction over public utilities vested in the Public Utilities Commission by the Constitution and the statutes above referred to would be effectively nullified.
The judgment is reversed and the cause remanded to the trial court with directions to dismiss the same.
Swain, Acting P. J., and Kauffman, J., concurred.